533 So.2d 70 (1988)
SUCCESSION OF Salter WALKER.
No. 87-660.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
Rehearing Denied November 21, 1988.
Writ Denied January 27, 1989.
*71 James Lynn Davis, Many, for plaintiffappellant.
Kenneth Simmons, Elizabeth Pickett, Many, for defendant-appellee.
Before DOMENGEAUX, KNOLL and KING, JJ.
DOMENGEAUX, Judge.
On October 25, 1985, decedent, Salter Walker, died intestate, survived by three brothers, three sisters and three nieces and nephews (children of a deceased brother). Plaintiff, Helen Walker Salley, and defendant, J.C. Walker, are two of these surviving siblings. Helen Walker Salley, in her capacity as administratrix of her brother's estate, brought this suit against J.C. Walker to recover approximately Thirty-one Thousand ($31,000.00) Dollars which the decedent gave to J.C. Walker in the form of a certified cashier's check on the day before his death. The administratrix later amended her petition to add as defendants Sarah and Charles Pilcher, J.C. Walker's daughter and son-in-law, alleging that the Pilchers were now in possession of the Thirtyone Thousand ($31,000.00) Dollars. Defendant, J.C. Walker, filed a reconventional demand claiming malicious prosecution and asking for damages.
Regarding the initial demand, the District Court ruled in favor of the defendant, J.C. Walker, holding that the transfer of funds constituted a valid manual gift from the decedent and hence, did not have to be returned to the decedent's estate. Additionally, the Trial Court dismissed the plaintiff's suit against Sarah and Charles Pilcher and dismissed J.C. Walker's counterclaim for malicious prosecution.
*72 The administratrix has appealed the Trial Judge's ruling that the transfer to J.C. Walker was a valid manual gift. The defendant, J.C. Walker, has answered the appeal and, additionally, appealed the Trial Judge's dismissal of his suit for malicious prosecution.

FACTS
On October 25, 1985, decedent, Salter Walker died intestate in Shreveport, after a lengthy illness. The decedent had never been married, had no children and his parents had predeceased him. In the preceeding year, on July 6, 1984, Salter Walker sold fifty-four acres of land he owned in Sabine Parish to two of his nephews for Fifty-four Thousand ($54,000.00) Dollars. The nephews were the sons of the administratrix, Helen Walker Salley. After the act of sale was completed, Salter Walker asked his brother, J.C. Walker, to accompany him to the DeSoto Federal Savings & Loan in Many, Louisiana, where Salter Walker proceeded to open two accounts. The first account was a checking account issued under the name "Salter Walker" and in which he deposited Twenty Thousand ($20,000.00) Dollars. Salter Walker then obtained a certificate of deposit in which he placed the remaining Thirty-four Thousand ($34,000.00) Dollars. The name on the certificate of deposit was "Salter Walker or J.C. Walker" and both Salter Walker and J.C. Walker's signatures appear on the savings and loan's authorized signature card. When questioned at trial as to the ownership of the Thirty-four Thousand ($34,000.00) Dollars, J.C. Walker stated that, at this time, he believed the Thirty-four Thousand ($34,000.00) Dollars was Salter's money and that he had no ownership interest therein, despite his name on the C.D.
In September, 1985, J.C. Walker pledged the certificate of deposit to secure a loan of Three Thousand One Hundred ($3,100.00) Dollars in order to pay the federal and state taxes Salter Walker owed from the land sale. J.C. Walker's name appears on the bank's records as the pledgor of the C.D. At the trial, Mr. Gary L. Stinke, a CPA hired by Salter Walker in September, 1985, verified the use of this amount for the payment of Salter Walker's taxes.
On Thursday, October 3, 1985, Salter Walker was admitted to the Veterans Administration Hospital in Shreveport. On the following Wednesday, Sarah Pilcher, J.C. Walker's daughter, visited Salter Walker in the VA hospital. It was during this visit that she claimed Salter Walker first asked her to cash the C.D. in the DeSoto Savings & Loan and to give the proceeds to her father. She testified that Salter Walker stated to her that he did not want his other brothers and sisters to have any of this money as they were very critical of his drinking habit. She told him that she could not obtain the cash as she had no authorization by the bank to remove the money from the account. He then asked her to call her father and have him withdraw the cash.
At this time, J.C. Walker was vacationing in Colorado. He periodically telephoned his daughter to keep apprised of his brother's health. At the next telephone call, on October 13, 1985, Sarah informed her father of her uncle's wish to cash the C.D. Also, the doctors had told Sarah that Salter's health was stablizing, and had indicated that he could possibly go home by the next weekend. Due to this prognosis, Sarah informed her father that Salter's condition was not critical.
On October 18, 1985, Salter's condition worsened. Soon thereafter, Sarah informed her father of Salter's decline and of his now often repeated request that J.C. cash the C.D. J.C. Walker returned to Louisiana the next day, Monday, October 21, 1985. On Wednesday, he went to the DeSoto Savings & Loan and obtained a cashier's check in the amount of Thirty Thousand One and 14/100 Dollars ($30,001.14), made to the order of "Salter Walker or J.C. Walker". On the same day, J.C. visited Salter in the hospital but Salter was incoherent. On Thursday, Salter was coherent and J.C. spoke to him about the check. J.C. showed Salter the check and asked Salter what he wished to be done with it. Salter told J.C. that he wanted J.C. to keep the money. Salter died on the *73 following evening, Friday, October 25, 1985. On Saturday morning, J.C. opened a new checking account in the Bank of Commerce in Shreveport and deposited the cashier's check. The checking account was in the name of "J.C. Walker". J.C. paid for Salter's burial expenses from this account and, a week later, withdrew the balance. He then gave the cash to his daughter Sarah for safekeeping in Sarah's safety deposit box. After the Pilchers were added as co-defendants, the Pilchers returned the money to J.C. who was in possession of it as of the trial on this matter.
The Trial Judge found that the cash belonged to J.C. Walker as Salter donated the money to him through a valid manual gift. He dismissed the suit against the Pilchers and dismissed J.C. Walker's countersuit against the estate for malicious prosecution.
As stated above, plaintiff, Helen Walker Salley, in her capacity as administratrix of Salter Walker's estate and the defendant, J.C. Walker, have each appealed the Trial Judge's ruling against them.

INTER VIVOS DONATION
Initially, we note that the Trial Judge ruled that Salter Walker had donative intent when he gave the certified cashier's check to J.C. Walker. The Trial Judge apparently believed the testimony of J.C. Walker and his daughter Sarah Pilcher regarding the donor's intent. This was a factual determination based on the witness' credibility. Reviewing Courts must give great weight to the conclusions of the trier of fact, and should not disturb the reasonable evaluations of credibility and reasonable inferences of fact in absence of manifest error. Henry v. State Farm Mut. Auto. Ins. Co., 465 So.2d 276 (La.App. 3rd Cir.1985). We find no manifest error in this determination, and hereby affirm this factual finding.
The plaintiff has appealed the Trial Judge's ruling that the decedent donated the amount of money to the defendant through a valid manual gift. The plaintiff argues that, even assuming a donative intent on the part of the decedent, because the C.D. was never reduced to cash, but instead, the defendant possessed only a certified cashier's check until the decedent's death, there could not have been a valid manual gift as a certified cashier's check is an incorporeal movable, and hence, subject to the form requirements of inter vivos donations in La.C.C. arts. 1536 and 1538; namely, the donation must be by an act passed before a notary public and two witnesses.
Under Louisiana law, property may be gratuitously disposed of in only two ways: (1) Donations inter vivos (between living persons), or (2) Donations mortis causa (in prospect of death). La.C.C. art. 1467. A donation mortis causa is only valid when done through a last will and testament. La.C.C. art. 1570. As the decedent in this case died intestate, there was no valid donation mortis causa of this certificate of deposit.
A donation inter vivos is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it. La.C.C. art. 1468. In order to be a valid donation inter vivos of immovable property or of incorporeal things, the donation must be by notarial act. La.C.C. art. 1536, 1538. The only exception to the form requirement of arts. 1536 is the giving of a manual gift. A manual gift, as defined by La.C.C. art. 1539, is "the giving of corporeal movable effects, accompanied by a real delivery." This type of donation is not subject to any formality.
Corporeal and incorporeal things are defined in La.C.C. art. 461:
Corporeals are things that have a body, whether animate or inanimate and can be felt or touched.
Incorporeals are things that have no body, but are comprehended by the understanding, such as the rights of inheritance, servitudes, obligations and right of intellectual property. Acts 1978, No. 728 § 1.
Cash is a corporeal movable subject to manual gift. Succession of Miller, 405 So.2d 812 (La.1981). A check which *74 has not been "reduced to possession" by being cashed by the donee prior to the donor's death is still an incorporeal movable which is not subject to manual gift. cf. Succession of Tebo, 358 So.2d 337 (La.App. 4th Cir.1978).
In Miller, supra, our Supreme Court, on rehearing, held that bearer bonds given by the decedent to the donee were insusceptible of manual gift as they were incorporeal movables. Thus, the bonds remained the property of the decedent and were included in the succession inventory. Under the reasoning of Miller, clearly a certified cashier's check would be an incorporeal movable as it is a movable item that represents the holder's right to collect the stated amount in cash from the drawer bank's own account. Hence, under Miller, the certified cashier's check that J.C. Walker possessed at the time of the decedent's death was insusceptible of manual gift and the amount subsequently deposited into J.C. Walker's personal checking account would be returnable to the decedent's estate.
However, in 1982, in an effort to overrule Miller, the legislature enacted La.R.S. 10:3-201(4) which states:
Donations inter vivos of negotiable instruments shall be governed by the provisions of this Chapter, notwithstanding any other provision of the Louisiana Civil Code or of any other law of this state relative to the form of donations inter vivos, to the contrary.
In addition, this Paragraph is remedial and retrospective. Any donation inter vivos of a negotiable instrument made on or before the effective date of this Paragraph, in accordance with the provisions of Chapter 3 of Title 10 of the Louisiana Statutes of 1950 or the Louisiana Civil Code or any other law of this state relative to the form of donations inter vivos, is valid.
Hence, we must determine whether a certified cashier's check is a negotiable instrument, such that the provisions of Title 10 apply rather than the form requirements of the Louisiana Civil Code.
La.R.S. 10:3-104 outlines the requirements of a negotiable instrument as follows:
Any writing to be a negotiable instrument within this Chapter must
(a) be signed by the maker or drawer; and
(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Chapter; and
(c) be payable on demand or at a definite time; and
(d) be payable to order or to bearer.
The certified cashier's check meets the four stated requirements; namely, it is signed by the maker, the DeSoto Federal Savings & Loan Association; there are no stated conditions or other promises only the promise to pay Thirty Thousand One and 14/100 Dollars ($30,001.14) on demand to Salter Walker or J.C. Walker. As we find the certified cashier's check meets the requirements of a negotiable instrument, any defects as to the form of the donation inter vivos from Salter Walker to J.C. Walker are to be governed by the commercial paper laws contained in Title 10 of the Louisiana Revised Statutes, rather than the form requirements contained in the Civil Code.
La.R.S. 10:3-201 states:
Transfer of an instrument vests in the transferee such rights as the transferor has therein ...
It was undisputed that Salter Walker was the owner of the certificate of deposit even though the names of both J.C. Walker and Salter Walker appeared thereon. We find that the donee/transferee, J.C. Walker, received the ownership rights that the donor/transferor, Salter Walker, had in the certified cashier's check when he donated/transferred the check to J.C. Walker. No additional endorsements were necessary in order to transfer ownership of the instrument to J.C. Walker as J.C. Walker was an alternate payee on the check and, as such, was a holder with the right to enforce payment in his own name. See *75 La.R.S. 10:3-201; 10:3-301; 10:3-116. Hence, we find that Salter Walker's transfer constituted a valid donation inter vivos to J.C. Walker notwithstanding the defects as to form under the Civil Code. The ruling of the Trial Judge awarding the ownership of the funds to J.C. Walker is hereby affirmed.

MALICIOUS PROSECUTION
The defendant, J.C. Walker has appealed the Trial Judge's dismissal of his countersuit for malicious prosecution. The Trial Judge found that the defendant had not proven damages in order to recover.
The six elements of a malicious prosecution action, as listed in Johnson v. Pearce, 313 So.2d 812 (La.1975), are: commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against the plaintiff who was the defendant in the original proceeding; (3) its bona fide determination in favor of the present defendant; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff.
Public policy requires that all persons shall fully resort to courts for redress of wrongs, and the law protects them when they act in good faith upon reasonable grounds in commencing either civil or criminal proceedings. Robinson v. Goudchaux's, 307 So.2d 287 (La.1975).
Of the six aforementioned elements of malicious prosecution, we find no element of lack of probable cause on the part of the administratrix, Helen Walker Salley. In determining whether the defendant in a malicious prosecution suit has probable cause to file, courts must view facts as they were perceived by the person instituting the action. Wattigny v. Lambert, 490 So.2d 1115 (La.App. 3rd Cir.), writ denied, 493 So.2d 1221 (La.1986). Absence of probable cause does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the prosecuting party. Jones v. Soileau, 448 So.2d 1268 (La. 1984).
A review of the deposition of the administratrix, Helen Walker Salley, indicates that she held an honest belief that the decedent would not have donated Thirty One Thousand One and 14/100 Dollars ($31,001.14), the bulk of his estate, solely to J.C. Walker, in disregard of his remaining brothers and sisters. In listening to the evidence, the Trial Judge made a determination and believed the testimony of the donee and his daughter. As stated earlier, this credibility determination on the part of the Trial Judge will not be disturbed on appeal. As the administratrix of the succession, Helen Walker Salley was responsible for settling the affairs of the estate and distributing the decedent's property to the heirs. We do not find any lack of probable cause because the administratrix held an honest belief that a valid donation was not made, despite the Trial Judge's ultimate conclusion to the contrary. We affirm the Trial Judge's dismissal of J.C. Walker's countersuit for malicious prosecution.
For the foregoing reasons, we affirm the ruling of the District Court. Appellate costs are assessed one-half against Helen Walker Salley, in her capacity as administratrix of the estate of Salter Walker and one-half against J.C. Walker.
AFFIRMED.
KING, J., dissents for the written reasons assigned.
KING, Judge, dissenting.
I respectfully dissent from the opinion of the majority.
The majority finds that a valid donation of a negotiable instrument payable to order was made, under the provisions of the Louisiana Commercial Paper Law, only by an oral donation and a manual delivery of the negotiable instrument itself. This is contrary to the clear and unambiguous provisions of the Louisiana Commercial Paper Law which provide that a transfer or negotiation of a negotiable instrument payable to order can only be made by endorsement and delivery or by a valid transfer.
*76 The undisputed facts, as found by the majority, are that J.C. Walker claimed no ownership interest in or to a certified cashier's check (hereinafter "the check") made payable to the order of Salter Walker or J.C. Walker prior to the decedent, Salter Walker, telling J.C. Walker, on the day before he died, that he wanted him to keep it. The facts are also undisputed that Salter Walker did not ever endorse the check made payable to the order of Salter Walter or J.C. Walker and that J.C. Walker did not endorse the check until the day after Salter Walker died.
The majority finds that the check made payable to order was transferred under the Louisiana Commercial Paper Law, La.R.S. 10:3-201, et seq (hereinafter Commercial Laws) by finding that the check was a negotiable instrument validly transferred by its oral donation and manual delivery.
The real issue presented for decision is whether or not there was a valid transfer of the check under the Commercial Laws. The only way there could have been a valid donation of the check without a notarial act of donation is if there was a valid transfer of the check under the Commercial Laws which permit a donation of a negotiable instrument in a form that does not otherwise comply with the Louisiana law of donations.
The only way a negotiable instrument can be transferred is by endorsement and delivery or by a valid transfer.
La.R.S. 10:3-201(1) and (3) provide that: "(1) Transfer of an instrument vests in the transferee such rights as the transferor has therein ..." and "(3) ... Negotiation takes effect only when the endorsement is made and until that time there is no presumption that the transferee is the owner." (Emphasis supplied.)
La.R.S. 10:3-202(1) provides that: "(1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary endorsement." (Emphasis supplied.)
La.R.S. 10:3-204(1) and (2) provide that: "(1) A special endorsement specifies the person to whom or to whose order it makes the instrument payable. Any instrument specially endorsed becomes payable to the order of the special endorsee and may be further negotiated only by his endorsement." and "(2) An endorsement in blank specifies no particular endorsee and may consist of a mere signature. An instrument payable to order and endorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially endorsed."
Under Louisiana Commercial Paper Law an instrument payable to the order of a party can be negotiated by the payee's special endorsement to another person and delivery of the instrument to that person or the payee's endorsement in blank of the instrument, converting it to a bearer instrument, and the manual delivery of that bearer instrument to a third party. Here, there was no endorsement of the check by Salter Walker. For this reason I believe there was no negotiation of the check by Salter Walker to J.C. Walker under the Commercial Laws.
Under the Commercial Laws of Louisiana, the holder of an instrument payable to his order may transfer it for value without endorsing the instrument. Vidrine v. Carmouche, 422 So.2d 1327 (La.App. 3 Cir. 1982); N.E. England Associates, Inc. v. Davis, 333 So.2d 696 (La.App. 4 Cir. 1976). Value is defined under the Commercial Laws as any consideration sufficient to support a simple contract. La.R.S. 10:1-201. The holders of the check were Salter Walker and J.C. Walker since it was issued to their order, La.R.S. 10:1-201, but the owner was Salter Walker. A holder may take a negotiable instrument for value. La.R.S. 10:3-303. But for what consideration or for what value did Salter Walker transfer the check to J.C. Walker? Only a gratuitous promise by Salter Walker to give the check to J.C. Walker. Reliance on a gratuitous promise without required formalities is not reasonable and is not lawful cause or consideration for a simple contract. La.C.C. Art. 1967. Here, there was only a gratuitous promise by Salter Walker without any required formalities for donation *77 of an incorporeal. Nowhere does the Commercial Law provide for the transfer of a negotiable instrument by an oral donation. For this reason I believe there was no valid transfer of the check by Salter Walter to J.C. Walker under the Commercial Laws.
The majority finds that "No additional endorsements were necessary in order to transfer ownership of the instrument to J.C. Walker as J.C. Walker was an alternate payee on the check and, as such, was a holder with the right to enforce payment in his own name. See La.R.S. 10:3-201; 10:3-301; 10:3-116." Yet the majority finds that J.C. Walker only acquired his ownership interest in the check by oral donation from Salter Walker after being allegedly told by Salter Walker to keep the check. The majority does not contend that just because J.C. Walker was a payee on the check, and, as such, was a holder of the check with the right to enforce payment of the check, that this made J.C. Walker the owner of the check. If this were so, why did they have to find that Salter Walter donated the check to J.C. Walker? Would the majority contend that J.C. Walker was the owner of the check, had Salter Walker not allegedly donated it to him, just because J.C. Walker was also a holder of the check with the right to enforce payment? I think not. What I believe the majority does not recognize is that the attempted donation to transfer ownership of the check was an oral transfer invalid in form under both the Louisiana law of donation and under the Commercial Laws.
What the majority does is to find that an oral donation of an incorporeal thing, in contravention of the form required by La. C.C. Arts. 1536, 1538, because the incorporeal thing is a negotiable instrument made payable to the order of two people, can be a validly orally donated by one of the payees to the other under the Louisiana Commercial Paper Law. This, in my opinion, is logically inconsistent and is a bootstrapping argument. How can the original invalid oral donation of the incorporeal negotiable instrument be sufficient to create a valid transfer of the negotiable instrument under the Commercial Laws in order to escape the formalities required for a valid donation of the incorporeal negotiable instrument in the first place?
As the attempted donation does not comply with the form required by the Louisiana Civil Code articles dealing with donation of movables or with the Commercial Laws concerning negotiation or transfer of negotiable instruments there was no valid donation of the check by Salter Walker to J.C. Walker before his death. At the time of Salter Walker's death the ownership of the check was governed by the succession law of Louisiana, specifically the doctrine of seisen, and the entire proceeds of the check unquestionably belonged to the Succession of Salter Walker since there was no donation, valid in form, by him prior to his death.
For these reasons I would reverse the decision of the trial court and would find that the Succession of Salter Walker is the owner and is entitled to recover from J.C. Walker approximately $31,000.00 which the decedent, Salter Walker, attempted to give to J.C. Walker in the form of a certified cashier's check on the day before his death.