358 So.2d 337 (1978)
Succession of Emma C. TEBO.
No. 9006.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1978.
*338 Breard Snellings, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, for plaintiffs-appellants.
Dudley D. Flanders, Richard T. Simmons, Flanders & Flanders, New Orleans, for defendants-appellees.
Before REDMANN, GARSAUD and De SONIER, JJ.
REDMANN, Judge.
By rule to traverse the descriptive list of the assets in this succession, a niece and a grandniece of decedent assert the effectiveness of inter vivos acts of decedent:
1. to donate checking account balances to the grandniece and a great-grandnephew by means of blank checks drawn by decedent to the niece's order, with written, dated and signed[1] instructions to the niece, which the niece carried out prior to decedent's death, to close out the two checking accounts and to deliver the balances to the named grandniece and great-grandnephew; and
2. to donate certain bearer bonds located in decedent's bank box and specifically described in a note addressed to the grandniece, written by decedent but undated and unsigned and by decedent's order and in her presence delivered to the niece (who is that grandniece's mother) at the same time the blank checks and their instructions were delivered, when the niece had written standing authority from decedent to enter the bank box and "remove at will" its contents, but did not get the bonds from the box and deliver them to her daughter (the named grandniece) because the relatives (including the residuary legatee) who had keys to the box would not give her a key to enable her to do so and, presumably, she and her daughter would not force the issue either by enlisting decedent's aid (decedent was then hospitalized but alert and lived two months longer) or by asserting her independent right to enter the bank box against the bank (through court proceedings if necessary).
The judgment appealed from held both acts ineffectual. We reverse as to the cashed checks and affirm as to the bonds.
The purely gratuitous donation inter vivos must be in the form of an act before notary public and two witnesses under penalty of nullity, La.C.C. 1536 and 1538, except that, as art. 1539 provides,
The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality.
Here there was no notarial donation. Thus no donation inter vivos was effected unless the described acts constituted manual gifts.

*339 The Checks

Because cash is considered a corporeal movable which may be donated by manual gift, the gift of an amount of money represented by the donor's check is a valid manual gift if "reduced to possession" by being cashed by the donee (prior to the donor's death), Succession of De Pouilly, 1870, 22 La.Ann. 97: "The check was the means or the vehicle of delivery." The principle which thus allowed De Pouilly to make a valid manual gift (upon fulfillment of his order), by ordering in writing his bank to deliver cash to a named donee, is equally applicable to allow our donor, Miss Tebo, to make a valid manual gift (upon fulfillment of her orders), by ordering in writing her bank to deliver cash to her named niece, whom she further ordered in writing to deliver the cash to the two intended donees.[2] We are unable to distinguish the one-written-order situation in De Pouilly from the two-written-orders situation before us.
Prior to Miss Tebo's death the grandniece accepted this donation to herself by physically accepting the cash, thus completing the donation.[3] The minor great-grandnephew's case is different although we reach the conclusion that an acceptance was made for him. Presumably because the written instructions were addressed to both the niece and a niece-in-law (enclosing two sets of blank checks, one payable to the order of the niece and the other to the niece-in-law), the niece delivered the money for the great-grandnephew to the niece-in-law, who is the grandmother of the great-grandnephew for whom the cash was intended. However, that niece-in-law and her husband (the grandparents) had reservations about the gift (in part because of an erroneous notion that gifts within three years prior to death were invalid) and therefore did not deliver the cash to the minor's father, as administrator of the minor's estate, C.C. 221. Nevertheless the grandfather did place the money in a savings account identified as for the benefit of the minor. We deem this an acceptance by an ascendant which is valid even though the ascendant not be the tutor of the minor, C.C. 1546.
Accordingly the cash actually transferred by both cashed checks was the subject of valid manual donations inter vivos, and the checking account balances are erroneously listed in the descriptive list of decedent's assets (as due from the niece).

The Bonds
Bearer bonds may also be transferred by manual gift, Succession of McCrocklin, 1962, 242 La. 404, 137 So.2d 274, althoughas in any manual giftdelivery must be had to make the gift effective, Succession of Land, 1947, 212 La. 103, 31 So.2d 609. The delivery required by the law is delivery by the donor or (as in the case of the checks in De Pouilly and here) by another acting upon the donor's orders.
We hold the bonds not manually given because there was no showing of delivery by the donor, nor of any order by the *340 donor for delivery by another. The absence of physical delivery may be ignored under the circumstances. The residuary legatee could not be allowed to increase his own legacy by preventing the testatrix from completing delivery, through the niece, of an inter vivos gift. Were that the case the residuary legatee (and other legatees who prevented delivery) should be estopped to assert non-delivery. But that is not the case. No delivery order by the testatrix to the niece is shown and therefore, had the niece gained entry to the bank box and physically delivered the bonds to her daughter, there would still have been no valid manual gift. The niece's understanding that she (or the niece-in-law) had orders to deliver the bonds arose from the facts that: (1) decedent's general note of instruction regarding the packet of several notes was "If I am very ill give this to [the niece-in-law and the niece] immediately", with the word immediately underscored thrice, indicating present urgency rather than testamentary intent; (2) the wording of the note to the grandniece included "these are to be used for down payment for housekeep interest to add to principal", indicating donative intent;[4] and (3) decedent had long previously given authority to niece and niece-in-law individually to enter the bank box and remove at will its contents, thus making it possible for either to obtain the bonds and to deliver them to the grandniece. (Decedent had also twice told the niece "there were some important envelopes in her desk that had to do with [the grandniece and great-grandnephew] . . . but what was in them I had no idea.") The niece's inference that decedent intended a present manual gift to be perfected by niece or niece-in-law's obtaining and delivering the bonds is a reasonable inference. But a reasonable inference is an insufficient foundation for an agent's power of attorney, or mandate, to make a donation: "to alienate . . . or do any other act of ownership, the power must be express", C.C. 2996; "the power must be express . . . where things to be done are not merely acts of administration," C.C. 2997. Because there is no testimony or other evidence of an express power authorizing the niece to give the bonds to the grandniece, we conclude that no manual gift has been established.
Accordingly the grandniece has no entitlement cognizable by law. At best there may exist the "natural obligation on those who inherit an estate . . . to execute the donations or other dispositions which the former owner had made, but which are defective for want of form only", C.C. 1758. "A natural obligation", however, "is one which can not be enforced by action, but which is binding on the party who makes it, in conscience and according to natural justice." C.C. 1757(2).
The bonds are correctly listed among the assets of decedent's succession.
We assess all costs to the Succession because all costs were necessarily expended in the attempt to determine and effectuate the will of decedent.
Reversed as to checking account balances; affirmed as to bonds; costs to be paid by the Succession.
NOTES
[1] These instructions thus met the formal requirements for an olographic will or codicil, La.C.C. 1588, and they are dated after the date of the last will.
[2] "July 30, 1975

"Dear Leonard & Jessie,
"If I am very ill and will not be able to use, in the future my checking account. Close E. C. Tebo and give to Sherrill. Close out Emma C. Tebo and give to Christopher Nelson. I have made checks to both of you in case one is out of town or cannot be reached. Don't say anything about this. Keep it quiet please please. Thanks.
"T'Emma"
[3] We mention, but do not fully discuss, that a long-time nurse-sitter of decedent, who gave the envelope containing several handwritten items to the niece, was given $200 by the niece out of the proceeds of the account that went to the niece's daughter. The sitter had a check drawn by decedent on that account to the order of the sitter, blank in amount, and told the niece that it was to be for $200. The fact of the check's existence can hardly be doubted after reading the testimony of the wife of the then principal adviser (and later co-executor and residuary legatee) of decedent, although the check was torn up and thrown into a wastebasket in decedent's hospital room (as both the niece and the sitter testified). That the niece cashed only the one check on that account, rather than both one for $200 and one for the balance, does not alter the legal result from that which would have obtained had she cashed the two checks on that account.
[4] Just before the quoted words, however, after describing bonds, the note says "if not needed for Rosetta, Bea & Antoinette" [three nurse-sitters]. This language seems inconsistent with an intent to make a present gift to the grandniece.