542 So.2d 517 (1989)
Kathleen Griffin ROBERTS
v.
William V. ROBERTS, Jr.
In re William V. ROBERTS, Jr. and Kathleen Griffin Roberts (his spouse).
Nos. 88-CA-692, 88-CA-693.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 1989.
Rehearing Denied May 17, 1989.
*518 Lowe, Stein, Hoffman & Allweiss, Robert C. Lowe, Terence L. Hauver, New Orleans, for appellant.
Cronvich, Wambsgans & Michalczyk, Richard M. Michalczyk, Metairie, for appellee.
Before CHEHARDY, C.J., and GAUDIN and DUFRESNE, JJ
CHEHARDY, Chief Judge.
Kathleen Griffin Roberts appeals from a judgment judicially partitioning community property. Both parties further appeal from a permanent alimony judgment rendered at the same time.
On appeal Kathleen Roberts asserts the trial judge erred in his classification and valuation of certain community assets and liabilities; in the amount awarded to William Roberts for his reimbursement claim; and in omitting community rental income from the partition judgment. Mrs. Roberts further contends the trial judge erred in failing to accumulate past-due pendente lite alimony.
Mr. Roberts answered the appeal filed by Mrs. Roberts. He contends the alimony award should be reversed.
In her first assignment of error, Mrs. Roberts argues a remand is necessary to determine the value at the time of trial of the property located on Lookout Place in Slidell, Louisiana, and L & A Road in Metairie, Louisiana. She also contends a remand is required to determine the possible existence and whereabouts of certain bank deposits mentioned casually in the testimony, but not listed on either of the parties' descriptive list.
The evidence at the trial which was related to the value of the properties was presented by the testimony of the parties and a 3½-year-old appraisal. Mr. Roberts stated the Lookout Place property had a value of $73,000 based on its purchase price of $62,000 and $11,000 in improvements. Mrs. Roberts testified the house and land were worth $91,000 based on the purchase price of $56,000, plus $35,000 in *519 improvements. No appraisal was submitted for this piece of real estate.
The property located on L & A Road was owned 90% by the community and 10% by Mr. Roberts' business associate. It included two pieces of land with buildings which were originally used in Mr. Robert's business, Bill Roberts, Inc., now defunct. Both Mr. and Mrs. Roberts valued those pieces of property at around $300,000. However, Mr. Roberts submitted an appraisal as of July 1983 which valued the properties at $337,000-90% of which totalled $269,600.
In the judgment the trial judge valued the Lookout Place at $73,000 and the L & A Road real estate at $269,600. Mrs. Roberts states these values were erroneous because the law requires the trial judge to value assets of the community as of the date of trial. LSA-R.S. 9:2801, Pitre v. Pitre, 501 So.2d 344 (La.App. 3 Cir.1987). Since no appraisal was presented of the value on the date of trial, she contends the issue must be remanded for this evidence.
R.S. 9:2801 provides the rules for judicially partitioning the community property when the spouses cannot agree. R.S. 9:2801(4)(a) mandates the trial judge to:
"Value the assets as of the time of trial on the merits, determine the liabilities and adjudicate the claims of the parties."
In paragraph (3) of the article, the court is given discretion to appoint experts as it deems proper, including for the purpose of appraisals.
In this case, neither Mr. Roberts nor Mrs. Roberts nor the trial judge found it necessary to obtain current appraisals, although the opportunity existed for any or all to do so. The trial judge properly chose from the best evidence and Mrs. Roberts cannot now complain of the result. We find no error therefore in the trial judge's valuation of the real estate located on Lookout Place and L & A Road.
In the next issue, Mrs. Roberts asserts that testimony during the trial gave rise to a suspicion there existed one or more bank accounts not accounted for by Mr. Roberts. She contends Mr. Roberts mentioned a Greater New Orleans Homestead account which may have had a balance of $48,000 at the time the separation was filed and the community terminated in October 1983. She further asserts it was proven he had a balance of $42,143 in a Gulf Federal Savings and Loan account in December 1982, the month prior to the physical separation. In addition, Mrs. Roberts claims Mr. Roberts' testimony indicated there may have been two other unreported accounts in Security Homestead and First National Bank.
After reviewing the record, we agree there exists some confusion regarding the various accounts, both joint and those which were obtained after the judicial separation became effective on October 11, 1983. And in fact, Mr. Roberts admitted that as to the Gulf Federal account a balance remained in December 1982 but he could not state with certainty what happened to the money. However, it appears that the funds in the Gulf Federal account disappeared during the existence of the community, which would preclude a requirement for accounting unless there was evidence of fraud or bad faith. (See LSA-C.C. arts. 2354 and 2369.) At any rate, the testimony shows Mr. Roberts was adequately cross-examined on the question of the accounts, and a remand would serve no other purpose than to give Mrs. Roberts an improper retrial of the issue.
Next, Mr. Roberts contends the judgment should be amended in respect to the following 12 items:
1. The termination date of the community;
2. The valuation and classification of a 1980 Mercedes-Benz 450SL partitioned to Mr. Roberts;
3. The value placed on three Oriental rugs partitioned to Mrs. Roberts;
4. The amount awarded Mrs. Roberts as her interest in the Bill Roberts, Inc. Pension and Profit Sharing Plans;
5. The partition to Mrs. Roberts of $56,000 used by her prior to the termination of the community, (First National Bank of Commerce *520 Money Market Account No. XX-XX-XXX);
6. The value of a check received by Mrs. Roberts for flooding of the Slidell property;
7. The valuation of a Pelican Homestead Savings Account No. XX-XXXXXXXX partitioned to Mr. Roberts;
8. The value of a First Bank of Slidell Account No. XXX-XXX-X partitioned to Mr. Roberts in the amount of $65,000;
9. The omission of community rental income from the judgment;
10. The classification of a "Ditch Witch" and Motorola radios;
11. The amount of mortgage balances partitioned to Mr. Roberts;
12. The amount of Mr. Roberts reimbursement claim.
The first item Mrs. Roberts requests amendment of is the termination date of the community. The trial judge stated in his reasons for judgment that he was adjusting Mr. Roberts' claim for reimbursement to conform with the community termination on January 4, 1984. Mrs. Roberts asserts, and we agree, that the community terminated on October 11, 1983, the date the separation petition was filed. The January date reflects the date the separation was granted but once the separation was granted, the community ended retroactively to the date the petition was filed. LSA-C.C. art. 155.
While we find the trial judge used the wrong date, we note he may have done so inadvertently because the October date was acknowledged and recognized by counsel and the judge during the trial. Regardless, it will be necessary for us to recalculate the claims based on the correct date to insure the proper allocation of the assets and liabilities of the community.
The second item complained of by Mrs. Roberts is the value placed on the 1980 Mercedes-Benz 450SL and/or its partition to Mr. Roberts. Mrs. Roberts argues first that the car was a gift to her and therefore her separate property. Secondly, she contends the value of the vehicle was $20,000 not $28,000, the figure used by the trial judge.
Mrs. Roberts and the parties' daughter Scarlett testified the vehicle was a gift. In support of this assertion, they testified Mr. Roberts told people he gave Mrs. Roberts the car. They pointed out Mr. Roberts purchased a special license plate with "Lucky L" on it meaning "Lucky Lady", Mrs. Roberts' nickname. Mrs. Roberts and Scarlett also contended Mrs. Roberts used the vehicle almost exclusively, and that she and Mr. Roberts usually drove his corporate car when they went out. In respect to its value, Mrs. Roberts claimed the vehicle was worth no more than $20,000 at the time the case was tried, but provided no support for the opinion.
Mr. Roberts testified the car was not a gift and was intended to be a community asset. He stated Mrs. Roberts drove the Mercedes almost exclusively because he drove the company vehicle. Although he did not specifically testify to its value, he determined it was worth $28,000 on his discriptive list. Like Mrs. Roberts he failed to provide sustantiation for this value.
In order for the appellate court to disturb the factual findings of the trier of fact, it must find manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1979). After listening to the testimony and examining the evidence, the trial judge concluded the Mercedes-Benz was a community asset worth $28,000. We find no manifest error in this finding, particularly since Mrs. Roberts had ample opportunity to present the court with evidence supporting her position. Thus, neither is a remand necessary.
The next item in dispute is the $5,000 value placed on three Oriental rugs. Again neither party produced any evidence but their own opinions as to the value of the rugs. Since the rugs were 8 to 9 years old, Mrs. Roberts contends they cannot be worth $5,000 because that is what the couple paid for the rugs. In her opinion, Mrs. *521 Roberts claims the carpets were worth $2,500 at the date of trial.
We have reviewed the evidence in this regard and note that the trial judge again chose a figure reflecting Mr. Roberts' opinion over Mrs. Roberts' opinion. Without further substantiation of her evaluation of the worth of the carpets, we cannot say the trial judge was clearly wrong in assessing the rugs' value at $5,000. Like our finding regarding the Mercedes-Benz, she had the opportunity to present supporting evidence and did not do so, thus a remand is unwarranted for this item as well.
The fourth item Mrs. Roberts claims should be amended involves her interest in Mr. Roberts' pension and profit sharing plans. She argues the trial court erroneously ruled the plans had "already been divided in kind" and valued the plans for partition purposes at $89,172. She contends the proper method of determining her interest is the formula set forth in Sims v. Sims, 358 So.2d 919 (La.1978). Under that formula she concludes she is entitled to $114,637.45 not the $62,112 she has so far received.
The Sims formula is the correct method to determine a spouse's entitlement to pension benefits. However, Mr. Roberts argues the parties agreed this item was not part of the partition since it had been divided previously. After our review, we find that counsel for Mr. Roberts commented to this effect during the trial, and it appears to have been agreed upon by the parties and understood by the trial judge. Consequently, we find no reason to review this issue.
The fifth item complained of is the partition to Mrs. Roberts of the FNBC Money Market Account valued at $56,000. Mrs. Roberts asserts these funds were withdrawn by her to live on prior to filing suit. Furthermore, since the funds were withdrawn during the existence of the community, she contends she need not account for them.
The trial judge determined Mrs. Roberts was accountable for the funds and stated she could not use them for her expenses in the absence of a court-ordered judgment of support. Presumably he based his conclusion on LSA-C.C. art. 2369, which provides for an accounting between spouses for community assets under a spouse's control at the termination of the community. However, the article by its language applies to assets in existence when the community ends, it does not apply to assets used while the regime of acquets and gains is still operating. To remedy the loss of an asset caused by a spouse during the community property regime, the complaining spouse must look to LSA-C.C. art. 2354. That article provides that a spouse is liable for fraud or bad faith in the management of the community. Otherwise, unless specifically provided for, either spouse is entitled to manage community assets regardless of whether they are physically separated or not. Only judicial separation or divorce terminates the rights and obligations imposed by the community property regime. Consequently, the $56,000 FNBC Money Market account will be deleted from the partition judgment.
Next, Mrs. Roberts contends the trial judge erred in partitioning to her a check valued at $5,600 for the flood damage to the Slidell property. She asserts the correct value should be the actual amount of the check $4,154.76, as shown by a copy attached to her brief. We have examined the exhibits introduced at trial and reviewed the testimony and do not find either the check, a copy of it or reference to the $4,154.76 in the testimony. The only evidence of the check's value is provided in both parties' descriptive lists and Mr. Roberts' testimony. That value is asserted to be $5,600. We cannot say, therefore, that the trial judge erred in valuing the check at $5,600.
The seventh item presented for our review is a Pelican Homestead Savings account partitioned to Mr. Roberts and valued at $1,900. However, as Mrs. Roberts points out, this account is an asset and should be valued as of the date of trial. LSA-R.S. 9:2801(4)(a). At the time the case was tried the evidence shows it had a balance of $2,389.53. Consequently, the *522 partition must be amended to reflect the correct value.
Item No. 8 involves the First Bank of Slidell account partitioned to Mr. Roberts with a value of $65,000. This account was opened in the name of Mr. Roberts' girlfriend during the two months prior to filing of the separation petition. He admitted the funds were community and at the termination of the community in October 11, 1983, the account contained approximately $155,000. Our review shows that $80,000 of that amount was borrowed from his company and was repaid, leaving a balance of $75,000. The testimony shows that another $10,000 was added back to the pension plan when that item was divided and disbursed to the parties subsequent to the termination of the community. Consequently, we find the trial judge did not err in partitioning the account to Mr. Roberts with a value of $65,000.
The ninth item requiring our attention involves the community rental income, which was apparently inadvertently omitted from the judgment. Mrs. Roberts contends this item should be partitioned to Mr. Roberts with a value of $157,912, representing the monies Mr. Roberts received from the rentals from October 1983 to date of trial.
The parties received income from the rental of three pieces of property, one on David Drive and two on L & A Road. Mr. Roberts testified he received the rentals as follows:

October 1, 1983-December 31, 1983 $ 17,682.00
January 1, 1984-December 31, 1985 69,388.00
January 1, 1986-July 31, 1986 33,978.00
August 1, 1986-April, 1987 36,864.00
 ___________
 $157,912.00

Of that amount he stated he paid Mrs. Roberts $30,120 as part of an alimony judgment. He calculated the total as follows:

November, 1984 (date of alimony judgment) to
November, 1985:
 12 months times $1,200
 (representing rental monthly) = $14,400
December, 1985 to July, 1986:
 8 months times $1,200 = $9,600
August, 1986 to April, 1987:
 9 months times $680 = $6,120

Mr. Roberts testified he reduced Mrs. Roberts' share of the rentals ordered by the alimony judgment due to the loss of the tenant at the David Drive property as represented by the final nine months of payments. Subtracting her $30,120 and an equal amount for his share, the amount left to be accounted for is $97,672, not $157,912. Consequently, we will amend the judgment in this respect by partitioning $97,672 to Mr. Roberts for rental property income. The judgment will further reflect the division in kind of $60,240.
Next, Mrs. Roberts contends the trial judge erred in failing to include the value of a "Ditch Witch" and some Motorola radios used by Bill Roberts, Inc., and eventually sold at auction, in the partition. The trial judge ruled the items were assets of the corporation (Bill Roberts, Inc.), the values of which were included in the stock the parties had divided previously.
In his testimony and in his brief, Mr. Roberts agrees the value of those items were erroneously omitted because they were community assets bought with community funds. The evidence shows the parties are correct. The equipment was purchased by Mr. Roberts and his partner with the money from a personal loan and leased to the corporation. The loan was paid back by the lease payments. Consequently, we will amend the judgment to partition these items to Mr. Roberts at a value of $4,620, the sum reflecting the price he received for the items when they were sold at auction.
Mrs. Roberts next complains that the trial judge calculated certain mortgage balances erroneously by using the original amounts instead of the balances at date of trial. Mr. Roberts in his brief agrees, and we find likewise. Thus, we will amend the judgment to reflect the correct amounts as follows:
1. 3110 Lookout Place, Slidell, Louisiana $47,248.06 instead of $50,000 (as of December 31, 1986).
2. 2500 and 2508 L & A Road, Metairie, Louisiana$109,347.05, instead of $148,601.
*523 3. Property located in Covington $6,833.09 instead of $9,497.
In addition, the debts for two other liabilities, the New York Tax Shelter and the property at David Drive, had been paid off and will be deleted from the judgment.
In regard to the liabilities partitioned to Mr. Roberts, Mrs. Roberts contends the trial judge overvalued the reimbursement claim. The claim contains 77 items reflecting community debts paid for by Mr. Roberts. Mrs. Roberts argues the claim is worth $212,184.60. In this respect, she disputes the value of 26 items on the list as either overvalued or undervalued. Those items that she asserts as too little do not take into account an addendum produced by Mr. Roberts which Mrs. Roberts uses to recalculate the claim for that particular item. However, the addendum was not introduced into evidence and we cannot find any documentary support for the individual items. Since we are not empowered to consider evidence not made part of the record, we cannot consider the addendum. On the other hand, the transcript reflects the in globo amount of $28,548 was testified to as the amount updating the descriptive list claim. That amount has been taken into consideration in our recalculation of the 26 disputed debts.
Our review of the testimony and documentary evidence indicates that some of the figures used by Mr. Roberts included payments made prior to the termination of the community on October 11, 1983. Since he is not entitled to be reimbursed for those amounts, we have adjusted the individual figures to reflect that fact. The following represents our conclusions as to the disputed 26 amounts:

 1. Cooper Communities (Hot Springs Lot) $ 7,597.59
 2. FNJ (L & A Road) 61,966.61
 3. Pelican Homestead (L & A Road) 14,624.64
 4. Bank of New Orleans (Ditch Witch) 0.00
 5. South Savings (Lookout Place) 17,272.25
 6. Ray Castanedo (Lot in Covington) 4,734.84
 7. Bank of St. Charles (David Drive) 3,458.09
 8. Pelican Homestead (Pratt Street) 11,704.70
 9. Ochsner Clinic 132.50
10. Tax Shelters/Partnerships 43,400.00
11. Hot Springs Village Prop. Assn.
 Maint. & Tax 152.00
12. St. Tammany Tax (Jefferson Parish Tax) 562.96
13. City of Slidell Tax 510.06
14. Saline County (Hot Springs) Tax 16.63
15. First National Bank of Commerce
 (Motorola radios) 0.00
16. Latter & Blum (Comm. on lease L & A Road) 1,440.00
17. City of SlidellLookout Place 255.39
18. Hot Springs Village (Maint.) 76.00
19. L P & L (Pratt Street) 329.04
20. Coward Agency (Insurance) 371.00
21. National Flood Insurance 108.00
22. National Flood Insurance 107.00
23. Coward Agency 120.00

*524
24. City of Slidell (Lookout Assessment) $288.64
 ___________
 $169,227.94
 Plus the other 52 items: 44,350.25
 ___________
 TOTAL $213,578.19

Mr. Roberts is responsible for half the community debts, just as he is entitled to half the community assets. Consequently, this amount will be divided for a value of $106,789.09, which amount will be partitioned to him under the liabilities portion of the judgment.
The final error specified by Mrs. Roberts relates to the trial judge's failure to award arrearages to her for past-due alimony. In this respect Mrs. Roberts claims her ex-husband owes her $8,320 because he stopped paying her a part of the rentals in July 1986.
On November 29, 1984, the trial judge ordered Mr. Roberts to pay Mrs. Roberts: "$400 from the interest received on the community certificates; $1700 from Mr. Roberts, $1200 of which is payble from the rental income of the community leased property * * *."
Mr. Roberts testified he stopped paying Mrs. Roberts $520 of the $1,200 due her from the rental income on July 1, 1986 because the tenant moved out of the David Drive property. He stated he felt justified in doing so unilaterally because of the language in the judgment.
The law in Louisiana has long held that a payor spouse may not unilaterally reduce or stop payments of alimony or child support. In order to receive a modification, the payor spouse must apply to the court and show a change of circumstances. LSA-R.S. 9:311. Consequently, we find Mr. Roberts owes Mrs. Roberts the arrearages plus interest on each payment. See: Miller v. Miller, 321 So.2d 318 (La.1975); Caire v. Caire., 452 So.2d 194 (La.App. 4 Cir.1984). However, we do not find an award of attorney fees appropriate because the judgment is subject to misinterpretation. See: LSA-R.S. 9:305. In addition we calculate the amount owed as $7,800 (15 months at $520), rather than $8,320 claimed by Mrs. Roberts.
Finally, Mr. Roberts answered the appeal contending the trial judge erred in failing to terminate Mrs. Roberts' alimony award. Mr. Roberts asserts the division of the community property has provided Mrs. Roberts with substantial assets and that she has cash reserves, some of which he contends she has hidden. Thus, he claims she has sufficient means for her support.
A spouse is entitled to permanent alimony when she/he has not been at fault in the divorce and has insufficient means for support. LSA-C.C. art. 160. Article 160 states in pertinent part as follows:
"(2) In determining the entitlement and amount of alimony after divorce, the court shall consider:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant.
(3) In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances."
In this case, the assets Mrs. Roberts received in the partition were: the family home ($200,000); furnishings, appliances, miscellaneous collectibles ($30,574); half of a savings bond ($17,000); a flood check ($5,600); an L P & L rebate check ($600); and the First National Bank of Commerce *525 Money Market account of $56,000 (which we will eliminate per our prior discussion).
In her testimony Mrs. Roberts stated she worked as a beautician years previously and that she suffers from severe rheumatoid arthritis. Because of her condition Mrs. Roberts testified she cannot work. While her age is unknown, we note the parties have two married children and were married for 22 years.
On the other hand, Mr. Roberts is self-employed with a corporation he started after abandoning Bill Roberts, Inc. He received several pieces of real estate in the partition ($638,600); the proceeds from the sale of a pickup truck ($2,000); miscellaneous items ($3,800); a boat and motor ($2,500); his share of the savings bond and the rebate check ($17,000); a flood check ($11,000); several accounts ($107,178) and the Mercedes-Benz 450SL ($28,000).
The trial judge analyzed the evidence and appears to have considered the factors listed in C.C. art. 160, including the assets available to Mrs. Roberts. He determined Mrs. Roberts was entitled to $750 per month alimony. After our review we cannot say he was clearly wrong in the award of alimony or the amount of the award.
For the foregoing reasons, the judgment of alimony dated September 30, 1987 is hereby amended to include an award of past-due alimony in the amount of $7,800 plus interest on each payment due from July 1, 1986 to September 30, 1987. In all other respects, the judgment of alimony is hereby affirmed.
The judgment of partition dated September 30, 1987 is amended as stated below:
It is ordered, adjudged and decreed that the community is partitioned as follows:
The court awards the following community assets to William V. Roberts, Jr.:

 1. Property at 3110 Lookout Place, Slidell,
 Louisiana $ 73,000.00
 2. Property at 2500 and 2508 L & A
 Road, Metairie, Louisiana 269,600.00
 3. Proceeds from sale of 1950 Ford
 pickup truck 2,000.00
 4. Coin Collection 3,500.00
 5. Guns 300.00
 6. Property in Hot Springs, Arkansas 11,000.00
 7. 25 acres of land in Covington, Louisiana 155,000.00
 8. Property at 2516 David Drive 112,000.00
 9. Proceeds from sale of Ditch Witch
 and Motorola radios 4,620.00
10. Undivided community rental income 97,672.00
11. 1976 19-foot boat, motor and trailer 2,500.00
12. Savings bonds (to be split
 equally between the parties) 17,000.00
13. Slidell flood check in escrow account
 at Southern Savings 11,000.00
14. L P & L rebate check (to be split
 equally between the parties) 600.00
15. First Bank Account No. XXX-XXX-X 65,000.00
16. Lot in Covington, Louisiana 18,000.00
17. Certificates of deposit at Central
 Savings, No. 0505006328 10,000.00
 No. 0505006220 10,000.00
 No. 0505006221 10,000.00
 No. 0505006136 10,000.00
18. Pelican Homestead Bank account 2,389.00
19. Security Homestead account 278.00
20. 1980 Mercedes-Benz 450SL 28,000.00
21. Fifty percent of the stock in Bill Roberts, Not valued
 Inc.
 ___________
 TOTAL $913,459.00

*526 The court awards the following community assets to Kathleen Griffin Roberts:

 1. Property at 4313 Pratt Street
 Metairie, Louisiana $200,000.00
 2. Three Oriental rugs 5,000.00
 3. One bedroom set 1,000.00
 4. White wicker set 250.00
 5. Living room furnishings 3,000.00
 6. Kitchen furnishings 2,000.00
 7. Dining room set 3,915.00
 8. China and crystal 1,000.00
 9. Den furnishings 3,430.00
10. Television and appliances 1,800.00
11. Foyer furnishings 2,000.00
12. Twelve place settings of silver 3,829.00
13. Miscellaneous collectibles 3,350.00
14. Savings Bonds (to be split
 equally between the parties) 17,000.00
15. Slidell flood check 5,600.00
16. L P & L rebate check (to be
 split equally between the parties) 600.00
17. Fifty percent of the stock in
 Bill Roberts, Inc. Not valued
 ___________
 TOTAL $253,774.00

The court finds that the following are debts of the community and assigns the same to William V. Roberts, Jr.:

1. Mortgage on property at 3110 Lookout
 Place, Slidell, Louisiana $ 47,248.00
2. Sewerage and Water Board improvements 2,200.00
3. Mortgage on property at 2500 and
 2508 L & A Road, Metairie, Louisiana 109,347.00
4. Reimbursement claim of William V.
 Roberts, Jr. (½ share) 106,789.00
5. Mortgage on property located in
 Covington, Louisiana 6,833.00
 ___________
 TOTAL $272,417.00

The net community assets awarded to William V. Roberts, Jr. total $641,042.
William V. Roberts, Jr., is ordered to pay to Kathleen Griffin Roberts the sum of $140,239, giving each party a net value of the community assets in the amount of $394,013.
The court finds that the following community assets have already been divided in kind by the parties:

1. Wisconsin tax shelter $100,000.00
2. New York tax shelter 100,000.00
3. Central Savings Certificate
 of Deposit No. 0505006263 10,000.00
4. Pension and retirement
 plans 89,172.00
5. Two Pelican Homestead
 IRAs 12,400.00
6. Community rental income 60,240.00

The court finds that the following items are not community property:
1. Three fur coats
2. Jewelry in possession of Kathleen Roberts
3. Jewelry in possession of William Roberts, Jr.
4. Stock in Diversified Enterprises, Inc.
5. Rental income for the property at 2516 David Drive
6. Income received on certificates of deposit
7. Personal checking account of Kathleen Roberts
The court finds that the following items are no longer in the community:
1. Beauty shop equipment
2. Stock and securities from Kahn & Co.
Appellant and appellee are to divide the cost of this appeal equally.
AFFIRMED IN PART, AMENDED IN PART AND RENDERED AS AMENDED.