593 So.2d 926 (1992)
Joseph Stephen KELLER
v.
Mary Louise SCHILLING.
No. 91-CA-0764.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1992.
Rehearing Denied March 18, 1992.
Alicia P. Gravolet, New Orleans, for plaintiff/appellee.
John H. Brooks, Gretna, for defendant/appellant.
Before KLEES and WARD, JJ., and GULOTTA, J. Pro Tem.
JAMES C. GULOTTA, Judge Pro Tem.
In this partition of community property, the defendant wife appeals from distribution of community assets.
Mary Louise Schilling and Joseph Stephen Keller[1] were married on February 2, 1950. The parties became separated in 1979 and remained apart culminating in an action for divorce filed on April 8, 1987.
The defendant wife's first assignment of error is that she claims the trial judge failed to consider a voluntary agreement between the parties partitioning community assets. According to defendant, the property voluntarily partitioned in accordance with C.C. art. 2336 becomes the separate property of each party and not subject to partition.
Art. 2336 was amended in 1981 to state in pertinent part:
"... During the existence of the community property regime, the spouses may, without court approval, voluntarily partition the community property in whole or in part. In such a case, the thing that each spouse acquires are separate property."
*927 This amendment was adopted after the physical separation of the parties, but before the filing for divorce. Thus, when the parties separated there was no provision in Louisiana law which recognized a voluntary partition of community property.
In Gachez v. Gachez, 451 So.2d 608 (La. App. 5th Cir.1984), writs denied, 456 So.2d 166. Our brothers on the Fifth Circuit, when confronted with the question of whether this civil code article can be retroactively applied, concluded in the negative. According to the Gachez court they concluded that absent any showing of a legislative intent to give retroactive effect to the statute, it will not be retroactively applied. See LSA-C.C. art. 8 and Green v. Liberty Mut. Ins. Co., 352 So.2d 366 (La. App. 4th Cir.1977).
Based on the above we conclude LSA-C.C. art. 2336 is not applicable to the instant case.
We might add at this point despite the wife's assertions there existed a voluntary partition of community property, we can find no support in the record for this claim. Accordingly, we conclude this contention is without merit.
Next, the defendant/wife asserts as error the trial court's failure to take into consideration cash and a car taken by the plaintiff/husband at the time of the physical separation and disposed of by him before the dissolution of the community. We reject this contention. Prior to the termination of the community, either spouse may dispose of community unless otherwise provided by law. See LSA-C.C. art. 2346. This claim is also without merit.
However, we do find merit to the defendant/wife's claim that the trial court erroneously charged against her portion of the community a tomb containing the remains of the wife's family members. The trial judge valued the tomb according to a report prepared by Charles Faucheaux, general manager of Westlawn Cemeteries, Inc. According to a letter in the record the value placed on the tomb was $24,985.00. However, according to Faucheaux' testimony, because the tomb was not a new one, the value stated in the letter was not correct. The effect of Faucheaux' testimony is that he hesitated to place any value on the tomb since it was not a new one. When asked if there had been any sales activity on existing tombs his response was on "rare occasions". Based on this evidence, a reasonable conclusion can be made that there is no market for tombs other than new ones.[2]
Based on this testimony, we conclude the trial judge erred in assigning a value of $24,985 and charging that amount against the defendant/wife's estate. We therefore, place no value on the tomb for partition purposes.
We find no error in any other of the conclusions reached by the trial judge regarding other aspects of the community property. Having so concluded we revise the division of assets as follows:

 I. ASSETS VALUE JK MS
 A) IMMOVABLES
 1) Family Home located at
 4925 Copernicus St. $52,250.00 $52,250.00
 B) MOVABLES
 1) Century Accounts $43,188.24 $43,188.24
 a) Century Bank
 #0160126 ( 8,708.41) ( 8,708.41)

*928
 b) Century Bank
 #11450474 $( 10,046.51) $(10,046.51)
 c) Century Bank
 #11450446 ( 10,046.57) (10,046.57)
 d) Century Bank
 #11450558 ( 10,046.51) (10,046.51)
 e) Century Bank
 #XXXX-XXXXX ( 4,340.24) ( 4,340.24)
 2) Amounts due from Mr. Keller
 a) Cash $3,500.00 $3,500.00
 b) Cash Value
 Insurance Policy 4,423.33 4,423.33
 3) Tomb in Westlawn Cemetery
 in Gretna -0- -0-
 4) Pension Benefits paid to JK
 since April 8, 1987 11,391.84 11,391.84
 5) Household Furnishings Inconsequential Value Possession and
 Ownership to
 Whomever has
 them now
 6) Two Aged Motorcycles Inconsequential Value Possession and
 Ownership to
 Whomever has
 them now
 7) Doubloon Collection Inconsequential Value Possession and
 Ownership to
 Whomever has
 them now
 _________________________________________________________
 $114,753.41 $71,565.17 $43,188.24
TOTAL ASSETS:
 II. LIABILITIES
 One-half of Net Community to Each $57,376.705
 Net Value of Assets to JK 71,565.17
 Net Value of Assets to MS 43,188.24
III. REIMBURSEMENTS
 Community Owes Debt to Mrs. Keller
 for insurance and plumbing repairs $776.70 × .5 = $388.35
 TOTAL REIMBURSEMENTS TO MS: $388.35
FINAL RECAPITULATIONS:
 JK MS
One-half Net Community $57,376.705 $57,376.705
Insurance and Plumbing Repairs 388.35 388.35
 ___________ ___________
 $56,988.355 $57.765.055

*929
(1) Net Value of Assets received by JK
(2) JK's Entitlement
(3) Overage received by JK
(4) Net Value of Assets MS is Entitled to
(5) Net Value of Assets received by MS
(6) Compensating Cash Owed by JK to MS
JK owes to MS: $14,576.815
 (1) $71,565.17 (4) $57,765.055
 (2) -56,988.355 (5) -43,188.24
 ___________ ___________
 (3) $14,576.815 (6) $14,576.815

Accordingly, judgment of the trial court is amended and as amended is affirmed.
AMENDED AND AS AMENDED IS AFFIRMED.
NOTES
[1] Joseph Stephen Keller died on June 15, 1990 and his son from a previous marriage, Stephen J. Keller has been substituted for his father in this proceeding. Stephen Keller is the plaintiff's testamentary executor of his father's estate.
[2] The commissioner to whom this case was assigned observed "There is no market in tombs." The record contains no other testimony regarding the tombs value other than Faucheaux's.