604 So.2d 721 (1992)
Delores Goss ROGE, Plaintiff-Appellee,
v.
Felix Louis ROGE, Sr., Defendant-Appellant.
No. 23775-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1992.
*722 Watson, Murchison, Crews, Arthur & Corkern by Joseph B. Stamey, Natchitoches, for defendant-appellant.
Bobby L. Culpepper, Jonesboro, for plaintiff-appellee.
Before MARVIN, VICTORY and STEWART, JJ.
VICTORY, Judge.
In this community partition action, the trial court granted appellant's ex-wife part of the interest on a personal injury judgment in his favor, and part of his worker's compensation settlement arising from the same injury. We amend in part and affirm.

FACTS
On October 21, 1980, Felix Louis Roge, Sr. suffered an eye injury from a broken tool manufactured by Snap-On Tool Company (Snap-On) while in the course and scope of his employment at C.E. Collins & Sons (Collins). Thereafter, he periodically received worker's compensation benefits of $163 until all payments were terminated on October 31, 1981.
On August 25, 1983, he settled his worker's compensation claim for $45,000.00 in addition to all previous payments, reserving his rights against Snap-On. On July 18, 1984, he was awarded a tort judgment for $45,059.10, plus interest from the date of judicial demand against Snap-On. The compensation carrier of Collins was awarded approximately $70,000 in the same suit, representing payments previously made to, and on behalf of, Mr. Roge.
*723 Meanwhile, Roge's wife, Delores Goss Roge, filed a petition for separation on February 1, 1983. A judgment of divorce was rendered on May 24, 1984 which ordered the community property regime terminated, retroactive to February 1, 1983, the date the petition for separation was filed. The parties were given until June 30, 1984 to amicably partition the community property.
On May 23, 1988, Mrs. Roge filed a petition for partition of community property. She included in her Sworn Descriptive List, as community property, the amounts Mr. Roge received from the worker's compensation settlement and the personal injury judgment.
Since all other issues had been settled prior to trial, the sole issue for resolution at the partition trial on November 14, 1988 was whether Mrs. Roge was entitled to any part of the monies received by Mr. Roge in the worker's compensation settlement and the tort judgment.
Although the trial judge initially ruled against Mrs. Roge, he granted her a new trial, and subsequently held she was entitled to part of the compensation settlement and half of the accrued interest from the tort judgment. Mr. Roge appeals.

INTEREST ON PERSONAL INJURY AWARD
Mr. Roge was awarded $45,059.10, plus legal interest against Snap-On Tools in his personal injury action. Suit was filed on October 13, 1981, and the judgment was not collected until September 19, 1984. Therefore, $16,037.25 in legal interest was paid, in addition to the $45,059.10 judgment. The trial judge awarded Mrs. Roge one-half of this interest, or $8,018.62.
Sums awarded in tort to a spouse for personal injuries sustained during the community are separate property. LSA-C.C. Art. 2344. However, the natural and civil fruits of separate property are community property, unless the owner spouse has filed a declaration reserving them as separate property. LSA-C.C. Art. 2339. Interest is a civil fruit. LSA-C.C. Art. 551. See Broussard v. Broussard, 340 So.2d 1309 (La.1976) and Young v. Young, 549 So.2d 437 (La.App. 3d Cir.1989). Since there is no evidence that Mr. Roge filed a declaration reserving it as separate property, the interest that accrued on his tort judgment during the existence of the community regime is community property. LSA-C.C. Art. 2338; West v. Ortego, 325 So.2d 242 (La.1975).
However, the trial judge gave Mrs. Roge one-half of all the interest, not merely one-half of the interest that accrued during the existence of the community regime. Mr. Roge showed that interest was paid on the tort judgment for a 35 month period; however, the community was in existence only during 15.5 of these months. Because the community regime was in existence during only 44.29% of the time interest was running and the interest rate remained constant during the period (LSA-C.C. Art. 2924), only 44.29% of the interest paid is community property.
We calculate 44.29% of $16,037.25 to be $7,102.90. One-half of this amount, or $3,551.45, reflects Mrs. Roge's portion. Mr. Roge urges that this amount be reduced by 1/3 to reflect the attorney's fees charged. However, the record is devoid of any evidence regarding attorney's fees purportedly paid out of the tort judgment.[1] Therefore, we amend the judgment to reduce Mrs. Roge's portion of interest on the personal injury award against Snap-On Tools to $3,551.45.

WORKER'S COMPENSATION BENEFITS
Mr. Roge initially argues that the trial judge erred in even considering the issue of *724 the worker's compensation settlement because he and Mrs. Roge entered into a stipulation on November 14, 1988 wherein they settled all items of community property except for the personal injury award against Snap-On Tools. However, the court minutes of the stipulation entered on November 14, 1988, state that the parties failed to agree on three items, two of which were the worker's compensation settlement and the personal injury judgment. There is no merit to Mr. Roge's argument that the parties had settled the issue.
Mr. Roge's worker's compensation benefits were terminated on October 31, 1981. Prior to that time, all weekly benefits paid were received while he and his wife were living together and are not at issue. From October 31, 1981 until the community regime was terminated on February 1, 1983, is 65 weeks. This 65 week period multiplied by $163 per week equals $10,595, the exact portion of the $45,000 compensation settlement the trial judge found was community property. The trial judge gave Mrs. Roge $5,297.50, representing one-half of $10,595.
Article 2344 of the Civil Code[2] provides, in relevant part, as follows:
Damages due to personal injuries sustained during the existence of the community by a spouse are separate property.
Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse.
Revision Comment (a) notes that worker's compensation benefits are included within the meaning of "personal injury." The trial judge apparently believed that $10,595 of the worker's compensation settlement was for "loss of community earnings" during the regime's existence. However, Mr. Roge contends the worker's compensation settlement took into consideration permanent injuries, disabilities, and future medical expenses, not only loss of income. He argues the trial court incorrectly concluded that the settlement merely represented approximately 275 weeks of compensation at $163 per week, and gave his ex-wife much more of the settlement than she was entitled.
The only case we have found on point since the effective date of LSA-C.C. Art. 2344 is Fontenot v. Fontenot, 571 So.2d 221 (La.App. 3d Cir.1990). The husband, Tim, was injured in a job-related accident on January 16, 1984, and received $147 in weekly benefits until February 18, 1985. On May 12, 1986, the community of acquets and gains was terminated, and in April 1987, Tim settled his worker's compensation claim for $30,000. After determining that $8,000 of the $30,000 settlement was for medical expenses and the remainder was compensation, the court concluded that the only reasonable way of calculating the value of the worker's compensation benefits to the community on the record before them was to regard the settlement as if $147 had been paid in weekly benefits until $30,000 was exhausted.
The instant case is similar because the $45,000 settlement is not categorized. The record does not reflect the extent of Mr. Roge's disability, how it may affect his income for the remainder of his working life, and on what basis the settlement was reached. Thus, on the record, the trial court found a reasonable method of calculating the community value of the worker's compensation settlement, basically following the Fontenot rationale.
In the absence of evidence showing more details of the factors negotiated in reaching the settlement, we cannot say the trial *725 judge was clearly wrong in determining that $10,595 was the community's share of the worker's compensation settlement due to loss of community earnings, and awarding Mrs. Roge one-half of that amount.

PRESCRIPTION
Mr. Roge further argues that Mrs. Roge's claim for part of the monies was prescribed. He contends the appropriate prescriptive period is three years under LSA-C.C. Art. 2369, and that more than three years lapsed from the termination of the community before Mrs. Roge's petition for partition was filed.
LSA-C.C. Art. 2369 provides:
A spouse owes an accounting to the other spouse for community property under his control at the termination of the community property regime.
The obligation to account prescribes in three years from the date of the termination of the community property regime.
Mrs. Roge did not file for an accounting under article 2369, but filed to partition the community property under LSA-R.S. 9:2801. The judgment of divorce rendered on May 24, 1984 ordered the parties to attempt to amicably partition the community before June 30, 1984 and ordered a notary to conduct an inventory of the property, if an amicable resolution could not be reached. When she filed for partition, Mrs. Roge listed the worker's compensation settlement and the tort judgment as assets of the community on her Sworn Descriptive List, and proved at trial that Mr. Roge had received these funds after the termination of the community regime. Under these circumstances, LSA-C.C. Art. 2369 is not applicable.

DECREE
For these reasons, the trial court's judgment is amended to reduce Mrs. Roge's award against Mr. Roge from $13,316.13 to $8,848.95. In all other aspects, the judgment is affirmed. Costs of this appeal are assessed to Mrs. Roge.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] At the conclusion of the hearing on the new trial motion, the parties agreed to hold the evidence open to allow Mr. Roge to present documentation of attorney's fees paid in connection with both the tort judgment and worker's compensation settlement. No documents were ever presented, although Mr. Roge's current attorney wrote the judge a letter telling him what Mr. Roge's attorneys had said they had charged. This letter was not in the record on appeal, but out of an abundance of caution, we asked the trial clerk to furnish us a copy. The trial judge apparently considered the letter, consisting of hearsay, inadequate documentation. We agree.
[2] Prior to the effective date of LSA-C.C. Art. 2344, the issue of how to divide compensation and personal injury award has been explored by the court on several occasions. See West v. Ortego, supra, and the cases cited therein. See also Placide v. Placide, 408 So.2d 330 (La.App. 3d Cir.1981).