639 So.2d 415 (1994)
In re SUCCESSION OF Harvey W. CARAWAY.
No. 25,879-CA.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1994.
*417 Lloyd Hennigan, Jena, for appellant.
Minard & Evans, by Iley H. Evans, Columbia, for appellee.
Before SEXTON and HIGHTOWER, JJ., and LOWE, J. Pro Tem.
HIGHTOWER, Judge.
Seeking a marital portion and asserting that interest income derived from her late husband's separate property constituted an asset of the community, a widow instituted suit against the decedent's three children, his intestate heirs. From an adverse judgment, she appeals. We amend and affirm.

BACKGROUND
In May 1980, Linda Exline and her three minor children moved into the home of Harvey W. Caraway. After he partially recovered from serious injuries sustained in a January 1982 automobile accident, Harvey, then age sixty-four, married his thirty-five-year-old companion in August of that year.
In October 1982, Harvey received approximately $270,000 in settlement of his claims arising from the accident. From these proceeds, he purchased a $42,000 home and approximately $15,000 in furnishings. His attorney, in turn, placed the remaining $212,180 in a certificate of deposit at a local bank and, at that same time, established a separate checking account into which the interest income would automatically accrue each month. No commingling of funds transpired. Recognizing that his injuries prevented him from properly managing his finances, Harvey granted his daughter, Carolyn Caraway May, a power of attorney. Under this general mandate, she administered her father's business affairs until he died intestate on April 1, 1990.
In a succession judgment, Harvey's three major children of a prior marriage, Carolyn, Vivian Caraway Hutto, and Danny Caraway, obtained possession of his assets, all recognized as separate property. Soon thereafter, in an action against the heirs, the widow sought a marital portion and asserted a community property claim in reference to the sum of $118,956.61 generated in interest by the CD during the marriage. She further averred that Carolyn owed her an accounting for all monies under the daughter's control through the power of attorney.
In written reasons after trial, the district judge declared the interest income to be separate property. He concluded that Harvey, as well as Carolyn, through the power of attorney, had the right to manage, control, and dispose of these proceeds without the concurrence of plaintiff, who could thus demand no accounting. Even so, the court found credible Carolyn's explanation that she used the money according to her father's instructions, primarily for the support and living expenses of him and his immediate family, including plaintiff and her three children.
Anent the marital portion, the trial judge determined that Harvey died rich in comparison *418 to plaintiff, customarily entitling her to one-fourth ($47,910.41)[1] of the estate in usufruct. However, upon deducting for past and future social security payments due the widow as a result of Harvey's death, and subtracting the value of using the former matrimonial residence, the trial court concluded such offsets greatly exceeded the marital portion and that the heirs owed nothing further. Plaintiff now appeals asserting several assignments of error.

DISCUSSION

INTEREST INCOME
In her first two assignments, plaintiff asserts that the trial judge erred in declaring interest derived from the CD to be her late husband's separate property. We agree with her position.
All of the parties correctly concur that the sum Harvey received in settlement of his premarriage personal injury claim, and the CD acquired with these funds, constituted the deceased's separate property. See LSA-C.C. Art. 2341; Young v. Young, 549 So.2d 437 (La.App. 3d Cir.1989). However, interest accruing from separate property during the community regime is community property, unless the owner-spouse has filed a contrary declaration. LSA-C.C. Art. 2339; Roge v. Roge, 604 So.2d 721 (La.App.2d Cir. 1992); Young, supra. See also Broussard v. Broussard, 340 So.2d 1309 (La. 1977).
Notwithstanding defendants' contentions, neither the power of attorney nor the deed, both executed in December 1982, reserved the CD interest as separate property. Although embodying authentic acts as required by LSA-C.C. Art. 2339, these instruments are not the type envisioned by that statute. Neither document mentions any reservation of fruits from Harvey's property, cf. Slater v. Culpepper, 233 La. 1071, 99 So.2d 348 (1957), and the deed simply indicates that the funds used for the acquisition are separate. To reserve the separateness of fruits effectively, that objective must be expressly stated in unambiguous terms.
Nor, without the statutorily mandated declaration, does the mere placing of interest into an account labeled "separate" change the true nature of the funds. Succ. of Norwood v. Norwood, 519 So.2d 338 (La.App.2d Cir.1988), writ denied. Hence, finding the interest income derived from the CD to be community property, we appropriately modify the trial court judgment.

ACCOUNTING
In three other assignments of error, plaintiff contends that the power of attorney did not authorize Carolyn to dispose of community property, and that the decedent's daughter failed to account for those sums of principal and interest involved. These propositions lack merit.
Harvey, through the power of attorney, authorized his mandatary to "conduct, manage, and transact" all affairs for him and to "sell, transfer, and convey" his property. Thus, his daughter could deal with his assets, community or separate, and engage in other financial activities, to the same extent as her father. See LSA-C.C. Arts. 2985, 2987, 3002. Cf. Haynes v. Haynes, 545 So.2d 1245 (La.App.2d Cir.1989) (approving a curator's execution of even a declaration of paraphernality on behalf of the interdict). We can discern no reason to impose a greater burden upon this gratuitous mandatary, when dealing with community property, than would be thrust upon the husband himself in similar situations. See LSA-C.C. Art. 3003; cf. Haynes, supra. The primary responsibility of the attorney-in-fact is to conduct affairs in conformity with his principal's best interest and wishes. See LSA-C.C. Art. 3002.
Nor do we agree with the contention that Carolyn failed to explain her actions adequately. Although, at the termination of the community, a spouse owes an accounting to the other spouse for community property under his control, he stands liable only for loss or damage caused by fraudulent or bad faith management. LSA-C.C. Arts. 2354, 2369; Roberts v. Roberts, 542 So.2d 517 (La. *419 App. 5th Cir.1989), writ denied. Furthermore, prior to that dissolution, either spouse alone may dispose of community assets unless otherwise provided by law, and may likewise so satisfy community obligations. LSA-C.C. Arts. 2345, 2346; Keller v. Schilling, 593 So.2d 926 (La.App. 4th Cir.1992); Patin v. Patin, 462 So.2d 1356 (La.App. 3d Cir.1985), writ denied. Logically then, these same principles apply to Carolyn, who by means of the mandate exercised her father's right to manage the interest income and the CD account.
Under LSA-C.C. Art. 2369, the duty to account simply requires an explanation of what happened to the property. Kyson v. Kyson, 596 So.2d 1308 (La.App.2d Cir.1991), writ denied. See also LSA-C.C. Art. 3004; K.S. Spaht, Matrimonial Regimes, Developments in the Law, 1986-1987, 48 La.L.Rev. 371, 385. Plainly put, no formal accounting is required. Instead, only a truthful and honest picture of the community at the time of dissolution need be presented. Dué v. Dué, 560 So.2d 917 (La.App. 1st Cir. 1990), writ denied. In reasons for judgment, the trial court termed the testimony of Carolyn "at all times" credible and found that the monies had been primarily used over a period of eight years for the support and living expenses of Harvey's immediate family, i.e., himself, the plaintiff, and her three children. Of course, we will not reverse the fact-trier's credibility evaluations or findings of fact, unless manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Reeves v. Reeves, 607 So.2d 626 (La.App.2d Cir.1992), writ denied.
Carolyn stated that she disbursed the interest income with her father's permission and according to his instructions, explaining that she spent the money on utilities,[2] insurance, doctor bills, household items, Christmas presents, and anything additional he needed. She also testified that plaintiff constantly asked for extra money and received cash in response to these requests.[3] Nothing within the record reveals fraud or bad faith in the handling of the accounts. Therefore, though the decedent's daughter did not expound upon every transaction shown in the bank records, we find no error in the district court's acceptance of her explanation concerning the property in her control. Cf., e.g., Reeves, supra; Oliver v. Oliver, 561 So.2d 908 (La.App.2d Cir.1990).
Appellant next argues that, even if a proper accounting occurred, any money given to Harvey's three children constituted invalid donations due to the lack of proper formality and Carolyn's failure to secure her concurrence. We disagree.
While the concurrence of both spouses is required for donations of community property to a third person, one spouse acting alone may make usual or customary gifts of a value commensurate with the economic position of the spouses. LSA-C.C. Art. 2349. Furthermore, a person's separate property is exclusively his and may be disposed of freely. LSA-C.C. Art. 2341.
Introduced bank records reveal that the CD generated interest of only about $1700 per month. According to Carolyn, after the family of four received its support from that sum, only small disbursements could be made from the checking account, thus necessitating that any large checks be drawn on the principal. She further testified that she consulted her father when she or her siblings required money, and that plaintiff had been present at these discussions. Harvey indicated to her, she said, that he wanted to help his adult children inasmuch as he lacked that financial ability when they had been younger.
Linda admitted being in the home each time Harvey's children visited, but denied hearing any financial discussions or engaging *420 in any consultations regarding the disposition of interest income. On cross-examination, however, she acknowledged that Vivian asked both her and Harvey for $15,000 as a down payment on a house, that plaintiff indicated "it was up to him," and that she then accompanied Vivian to tell Carolyn the donation had been approved.
Thus, based on the evidence, Carolyn did not need plaintiff's approval to make the contested donations. First, any sums over $1000 could only be satisfied from the principal account, Harvey's separate property from which he could make dispositions in any manner. Second, in that the trial judge found any gifts to the three adult children to be "nominal," such unusual and customary disbursements would require no concurrence by the other spouse. Considering the financial picture of the parties, the father's desire to occasionally provide such assistance is understandable and does not reflect extravagance. Furthermore, the record reveals that plaintiff had been present when many of the financial discussions transpired between her husband and his children, yet she voiced no opposition to the proposed actions.
Concerning the formalities, each contested transaction involved either a check or cash withdrawal from the aforementioned bank accounts. Such donations may be made both manually and through an agent, and are not subject to the requirements of form. LSA-C.C. Art. 1539; Succ. of Miller, 405 So.2d 812 (La.1981); Succ. of Gorman, 209 La. 1092, 26 So.2d 150 (1946); Succ. of Walker, 533 So.2d 70 (La.App. 3d Cir. 1988), writ denied; Succ. of Tebo, 358 So.2d 337 (La. App. 4th Cir.1978). Cf. LSA-C.C. Art. 1536.
Hence, notwithstanding that the accruing interest constituted community property, Carolyn and her father properly disposed of and accounted for such earnings. Only the checking account balance, $846.21 on the date of death, possessed a community character. We will therefore reshape the judgment to award plaintiff that sum, one-half in full ownership and one-half in usufruct until such time as she may remarry. LSA-C.C. Arts. 890, 2336.

MARITAL PORTION
In her final assignments, plaintiff contends the trial judge erred in his response to her marital portion demand. Although slightly revising the computations in accordance with our determination that the interest income is community property, we find appellant's arguments to lack merit.
When a spouse dies rich in comparison with the surviving spouse, the surviving spouse is entitled to claim a marital portion from the succession. LSA-C.C. Art. 2432. The survivor is ordinarily said to be in "necessitous circumstances" and awarded a marital portion when, upon comparing the patrimonial assets of the spouses, the ratio is five to one or more. Id., Comment (c); Smitherman v. Smitherman, 240 So.2d 6 (La.App.2d Cir.1970).
In evaluating Harvey's patrimony at his death, we reject plaintiff's assertion that those amounts expended from the CD principal, and any interest consequently lost, should be added to the value of the estate. As discussed in the previous section, because the CD constituted separate property, appellant cannot challenge its use even if completely depleted. Furthermore, this contention is in the nature of a claim for collation and reduction, rights clearly reserved unto forced heirs and unavailable to others. LSA-C.C. Arts. 1235, 1236, 1504; Francois v. Tufts, 571 So.2d 813 (La.App. 4th Cir. 1990), writ denied.
After modifying the trial judge's computations by subtracting plaintiff's one-half interest in the community checking account, we calculate the value of Harvey's estate to have been $191,218.51 at his death. Comparing that figure with Linda's limited patrimony, we agree that her husband died "rich." Thus, disregarding any applicable deductions, she would be entitled to one-fourth of the estate, $47,804.63, in usufruct for life. See LSA-C.C. Art. 2434.
However, the district court determined that the monthly $444 social security payments, received by plaintiff since her husband's death and based on his previous employment, should be deducted from the marital portion. Appellant argues that the trial *421 judge erred in granting defendants this credit and in utilizing both past and future sums. We disagree.
The provisions of LSA-C.C. Art. 2435 direct that: "A legacy left by the deceased to the surviving spouse and payments due to him as a result of the death are deducted from the marital portion." Further, Comment (c) to the article states that "payments" include benefits derived from social security. Thus, recognizing that the statute is intended to deduct income that reduces the widow's chances of living in poverty, we find no error in the trial court's decision to subtract the social security survivor's benefits. Cf. Succ. of Monroe, 494 So.2d 336 (La.App. 4th Cir. 1986), writ denied (suggesting that social security benefits may be deducted from the marital portion).
We also sustain the district judge's decision to calculate both past and future payments for reduction under LSA-C.C. Art. 2435. In determining the pretrial amounts, the court correctly multiplied the $444 social security payments by the forty months elapsing between Harvey's death and the trial. Cf. Succ. of Lichtentag, 391 So.2d 1382 (La. App. 4th Cir.1981) (determining the use value of a family home by multiplying the reasonable rental value by the number of months of previous occupancy). Further, in computing the deduction for future social security benefits, we likewise deem the American Experience Mortality Tables, set forth in LSA-R.S. 47:2405, appropriate for delineating plaintiff's present life expectancy at 285 months, and then projecting the payments over that period. Cf. Succ. of Henry, 287 So.2d 214 (La. App. 3d Cir.1973) (using actuary tables to calculate the future value of two life usufructs). Thus, the lower court did not err in deducting, from the marital portion, the $144,300 total value attributable to the social security benefits.
Given that the social security sum greatly exceeds the marital portion of the Caraway estate, we decline to address the contention that the value of the usufruct of the family home, as awarded in the judgment, should not have been treated as a deductible item under LSA-C.C. Art. 2435. Notably, defendants have not challenged the granting of the use of the residence, which the trial judge concluded would be in the widow's best interest.
In summary, we affirm the district court's general approach to the marital portion claim.

CONCLUSION
For the foregoing reasons, after amending to award Linda Exline Caraway the sum of $846.21, one-half in full ownership and one-half in a LSA-C.C. Art. 890 legal usufruct, we affirm the district court judgment. Costs of the appeal are assessed to plaintiff.
AMENDED AND AFFIRMED.
NOTES
[1] The trial court determined the total estate at death to be $191,641.61. This figure included $160,103.74 remaining in the CD account, $846.21 in the checking account, and the stipulated $40,000 value of the family home, less $9,708.33 in separate debts.
[2] The record reflects that $400-$500 per month automatically went into a checking account designated for utilities. Until September 1984, plaintiff controlled this account and usually had her husband sign the checks. However, after a series of overdrafts, the control changed into Vivian's hands until her father's death. Appellant makes no contention that the gas, water, or electricity bills went unpaid.
[3] The bank records reveal, in addition to identifiable expenditures, a large number of checks payable to "cash." Carolyn stated that the vast majority of these provided currency at plaintiff's insistence. Apparently, due to her inability to drive, Linda disliked travelling outside the home to cash checks.