555 So.2d 1001 (1990)
Barry Joseph BREAUX Plaintiff-Appellee,
v.
Elizabeth Menard BREAUX Defendant-Appellant.
No. 88-913.
Court of Appeal of Louisiana, Third Circuit.
January 17, 1990.
Rehearing Denied February 15, 1990.
*1003 Diane Sorola, Lafayette, for plaintiff/appellee.
Poteet & Landry, John G. Poteet, Jr., Lafayette, for defendant/appellant.
Before GUIDRY, KNOLL, JJ., and ROBERTS[*], J. Pro Tem.
CHARLES WM. ROBERTS, Judge Pro Tem.
This is an appeal from a community property partition judgment. The parties were married on September 14, 1979. A petition for separation was filed in July 1984 but a judgment of separation was never rendered. A petition for divorce was filed on September 6, 1985 and a judgment thereon was subsequently rendered. The judgment of partition at issue herein was rendered on March 28, 1988. Defendant has appealed and plaintiff has answered the appeal.
Defendant-appellant Elizabeth Breaux (hereinafter Elizabeth) has placed at issue the classification of certain properties, their value and obligations owed by the parties to one another. These include a 1981 Plymouth Voyager van, the separate or community nature of a Troy & Nichols mortgage, ownership of various shares of stock, the valuation of several community movables and reimbursement for community assets. Plaintiff-appellee, Barry Joseph Breaux (hereinafter Barry) answered the appeal raising issues as to the trial court's failure to award him damages for conversion, an adverse ruling concerning his pension, reimbursement for community funds spent on defendant's separate property, valuation of a dining room table and the distribution of assets and liabilities.
We affirm the judgment in part, reverse in part and remand with instructions.

OPINION

The 1981 Van
Elizabeth contends the trial court erred in finding that the 1981 Plymouth van (incorrectly listed in the judgment as an Aerostar van) is her separate property and that she owes reimbursement to the community for community funds used to purchase the van. The parties concurred in their sworn descriptive lists that the van is community property (Rec. 5-8, 73-76, 61-63 and 99-101). The testimony is also clear that this vehicle was acquired during the existence of the community (Barry, Rec. 297, Elizabeth, Rec. 326-327), although there is some disagreement as to the sales price of the old van, the source and amount of some of the purchase price, present value, etc. In view of the foregoing, the trial court was clearly wrong in not holding the van to be community property. Since we hold the 1981 Plymouth van to be community property, remand to the trial court is necessary to determine the value of the van, payments made and reimbursements or credits due. Because of the foregoing ruling, that portion of the trial court's judgment awarding Barry reimbursement for the monthly note paid with community funds is vacated.

Troy & Nichols Mortgage
In this assignment, Elizabeth contends the trial court erred in holding the Troy & Nichols mortgage to be her separate obligation, thereby relieving Barry of liability for one-half the mortgage, and in ordering Elizabeth to reimburse Barry for one-half *1004 of the principal paid on the mortgage with community funds.
The parties agreed that the house in which they resided during their marriage is Elizabeth's separate property, owned by her prior to their marriage. On December 10, 1979, after their marriage, the parties jointly borrowed $31,500 from First Federal Mortgage Corporation (which later became Troy & Nichols) and secured the loan with a mortgage on Elizabeth's house. The trial court correctly held that the loan is a community obligation since it was entered into during the existence of the community by both parties. See LSA-C.C. art. 2360 and LSA-C.C. art. 2361; Guillory v. Desormeaux, 179 So.2d 456 (La.App. 3d Cir.1965). The trial court erred in further holding that the loan was Elizabeth's separate obligation because the funds were spent on improvements to her house. The obligation is community and is subject to partition.[1]
However, Barry is entitled to reimbursement for his share of the community funds spent to improve Elizabeth's property. See LSA-C.C. art. 2366. Barry has alleged, but adduced no evidence to prove, that all of the funds were spent on improvements to Elizabeth's house. Elizabeth admits that $22,772.88 was spent on her house and has introduced a detailed account of how that amount was spent. Elizabeth testified that she does not know what happened to the rest of the money. We find that Barry has not carried his burden of proving that $31,500 was spent to improve Elizabeth's property. Therefore, we hold that Barry is entitled to reimbursement for one-half of $22,772.88, or $11,386.44.
We further find it necessary to remand the case to the trial court to determine the balance due on the loan on September 6, 1985 in order that the obligation may be partitioned equitably. Also, since Elizabeth has paid the notes on the loan since September 6, 1985, she is entitled to reimbursement from Barry for one-half the amount she has paid.

The Stock
Elizabeth contends the trial court erred in finding that 100 shares of Sara Lee stock are Barry's separate property and only 86 shares are community property. Both parties admit that Barry owned some Sara Lee stock prior to their marriage. The issue is how many shares.
After their marriage, Barry had the stock which he had acquired prior to the marriage reissued in both his and Elizabeth's names. These certificates bear only the date of the reissuance as the purchase date and are impossible to distinguish from the shares purchased during the marriage. There are 186 shares in all.
Barry testified that he owned 100 shares of Sara Lee stock prior to the marriage. Elizabeth testified that Barry owned some stock prior to their marriage, but definitely not 100 shares, and she indicates that it was some amount substantially less than 100 shares.
Things in the possession of a spouse during the existence of the community are presumed to be community, but either spouse may prove that they are separate property. LSA-C.C. 2340. The presumption of communty is rebutted as to property acquired prior to marriage by evidence establishing the date of acquisition. LSA-C.C. art. 2340, Official Comment (c). To overcome this heavy burden, the proof must be clear, positive and of a legally certain nature. Allen v. Allen, 539 So.2d 820 (La.App. 3d Cir.), writ denied, 541 So.2d 840 (La.1989); Succession of McVay v. McVay, 476 So.2d 1070 (La.App. 3d Cir. 1985).
We hold that Barry has failed to prove by clear and positive evidence the number of shares he owned prior to the existence of the community. The trial court clearly erred in accepting Barry's testimony that 100 shares were his separate *1005 property on the basis of Barry's credibility. Self-serving testimony does not, by itself, constitute clear, positive and legally certain evidence. Barry's separate shares of stock, in whatever amount, have become so inextricably commingled with the community shares that it is no longer ascertainable which shares are Barry's and which belong to the community. Barry failed to carry his burden of proof; and we must hold, therefore, that all of the Consolidated Foods/Sara Lee stock is community property.
Elizabeth further contends that the 17 shares of Sara Lee stock purchased by Barry in his name alone prior to the termination of the community are also community property. Barry admitted that these were purchased during the existence of the community. Therefore, we hold that these 17 shares are also community property to be partitioned in kind.
Elizabeth also claims her share of the stock from the December 1986 Sara Lee stock split. The stocks acquired during the split which are attributable to Elizabeth's one-half of the community shares are Elizabeth's separate property. Therefore, Elizabeth is entitled to the following total number of shares of Sara Lee stock: (186/2+17/2) × 2=203 shares.
Elizabeth also claims one-half of the dividends paid on the Sara Lee stock from 1985 through the present. Barry testified that he did not give Elizabeth any part of the dividends for 1985, 1986 or 1987. Testimony establishes that dividends of $301 were paid in 1985, $278.28 in 1986 and $150 for the first two quarters of 1987. Elizabeth is entitled to one-half of the dividends or $364.64. We further hold that any dividends since paid on Elizabeth's shares of stock must also be credited or delivered to her.
Finally, Elizabeth contends the trial court erred in failing to award to her one-half of 58 shares of Chrysler Corporation stock instead of one-half of 500 shares of American Motors stock. The evidence shows that the 500 shares of American Motors stock were converted into 58 shares of Chrysler Corporation stock in August 1987. Since Elizabeth's 250 American Motors shares were converted to 29 Chrysler Corporation shares, we hold that her Chrysler Corporation shares must be turned over to her.
Barry argues that the 500 shares of American Motors stock was purchased with money obtained from the sale of his separate 100 shares of Sara Lee stock after the stock split. However, the evidence does not support this argument since the American Motors stock was purchased in 1983 and the Sara Lee stock split took place in 1986.

Sale Of Community Movables
Elizabeth contends the trial court erred in ordering her to pay reimbursement to Barry for one-half the value of community movables sold by her. The items at issue are a gas barbeque pit, a typewriter, a VCR and a Remington 12-guage shotgun.
Testimony by Elizabeth, Barry and one of the children established that the VCR was purchased by the children with interest from their certificates of deposit and thus belonged to the children. Therefore, the trial court clearly erred in finding the VCR belonged to the community and the $75 reimbursement ordered paid to the community is reversed.
Testimony conflicted as to whether the shotgun was given by Barry's father to Barry or to the children. The trial court apparently found Barry's testimony more credible in finding the gun belonged to the community. In the absence of clear and positive evidence, we cannot say that the trial court clearly erred. The $100 reimbursement ordered paid to the community by Elizabeth is affirmed.
The gas barbeque pit was bought by a foster child to replace the old pit which she ran over with the car. The pit clearly belonged to the community and the $50 reimbursement ordered paid to the community by Elizabeth is affirmed.
The ownership of the typewriter was disputed by the parties. In absence of clear and positive evidence, we find the trial court did not clearly err in holding it was community property. The $100 reimbursement *1006 ordered paid to the community by Elizabeth is affirmed.

Valuation Of Movables
Elizabeth contends the trial court erred in placing arbitrary values on certain items of movable community property. In his answer to this appeal, Barry complains of the value placed by the trial court on a dining room table. The items and the values placed on them by the parties and the trial court are as follows:

 Elizabeth Barry Trial Court
2 single dressers $20 $ 75 $250
1 antique pantry 50 200 250
2 lawn mowers 0 50 25
1 dining table 50 25 300

The trial court is not required to accept, at face value, a party's valuation of assets or debts, or claims against the community. Kaplan v. Kaplan, 522 So.2d 1344 (La.App. 2d Cir.1988). However, the evidence must support the valuation arrived at by the trial court. We find that the trial court's valuation of the lawn mowers is well within the bounds of its discretion. However, the court's other valuations are beyond the bounds of its discretion since there is no evidence in the record to support the arbitrary values assigned by the trial court and the parties are in agreement that these items were overvalued by the court. We note that the trial court refused to accept the valuations proffered by defendant's appraiser and set his own values instead. Therefore, we must remand to the trial court for revaluation of these items in accordance with LSA-R.S. 9:2801, with specific mention of Section 3 of the statute which authorizes the court to appoint experts to assist it in the appraisal of community property.

Conversion
Barry contends in his answer to this appeal that the trial court erred in not finding that Elizabeth committed a tort by converting the savings accounts of Barry's children and by selling Barry's meat block and in not awarding him damages.
The testimony established that Elizabeth always kept the books on all of the children's savings accounts. Elizabeth contends that the accounts are intact. Barry has not proven any losses or damages caused by Elizabeth's retention of the accounts. Therefore, we find no merit to Barry's claim for damages for conversion of the accounts. Elizabeth is ordered to turn over to Barry all accounts belonging to Barry's children.
At trial, the court awarded to Barry $100 for the meat block sold by Elizabeth. Barry seeks further damages on appeal and the return of the meat block. Alternatively, Barry claims the trial court greatly undervalued the meat block. No evidence was adduced by Barry as to damages suffered as a result of conversion; nor did Barry or Elizabeth place a value on the meat block or adduce any evidence as to its worth. Apparently, the trial court awarded Barry $100 out of a sense of fairness. However, Barry's claim for further damages must be denied for lack of evidence. Barry's claim for the return of the meat block is also denied since it is clearly impossible for Elizabeth to return that which she no longer possesses.

Pension
Barry next contends on appeal that the trial court erred in failing to find that his pension was his separate property because it came into existence prior to his marriage to Elizabeth, became vested after the termination of the community and was funded completely by his employer.
The trial court held that Barry's pension is his separate property but that the community is entitled to reimbursement for the proceeds that were paid into the fund during the marriage. We hold that Elizabeth is entitled to one-half the proceeds from the pension attributable to Barry's employment with Bryan Foods during the existence of the community. However, this holding is *1007 not for a reimbursement to the community since the pension was funded entirely by Barry's employer. Our holding simply recognizes Elizabeth's interest in one-half the proceeds from the pension, insofar as they are attributable to Barry's employment during the existence of the community, when they become payable. This holding is in accordance with the legal precepts set forth in Simms v. Simms, 358 So.2d 919 (La.1978); T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975); Little v. Little, 513 So.2d 464 (La.App. 2d Cir.1987); Lewis v. Lewis, 467 So.2d 179 (La.App. 3d Cir.1985); Thrash v. Thrash, 387 So.2d 21 (La.App. 3d Cir.1980), writ denied, 393 So.2d 745 (La.1980). Therefore, the fact that Barry's pension was not vested at the time of the termination of the community is irrelevant to Elizabeth's entitlement. When the pension becomes due, Elizabeth is entitled to receive the proportion of the proceeds recognized by this judgment as attributable to Barry's employment during the existence of the community.

Texas And Arkansas Property
Barry contends the trial court erred in failing to fix the amount of reimbursement owed by Elizabeth to the community for the community funds used on the monthly notes of Elizabeth's Texas and Arkansas properties.
Elizabeth inherited $17,125.25 from her father. At trial, the parties agreed that Elizabeth's inheritance money was used to purchase the Arkansas property. Therefore, as the trial court found, the Arkansas property is clearly Elizabeth's separate property. Since it was entirely paid for with Elizabeth's separate money, she owes no reimbursement to the community for the Arkansas property.
The trial court also held that the two Texas lots are Elizabeth's separate property. Barry has not appealed this holding and only claims reimbursement for community funds spent on these tracts.
The parties agreed that the down payments on the two Texas lots were paid for with Elizabeth's separate money which she inherited from her father. However, the balances of the amounts owed on these lots were financed. Barry contends that the finance payments were paid with community funds. Elizabeth contends the payments were made with the $110 she received each month for child support and the remainder of her inheritance money; therefore, the payments were made with her separate funds. The monthly payments on the two tracts together are $160.66. Since the child support payment is insufficient to cover both land payments and there is no evidence of how much inheritance money was left or of how the remainder was spent, we hold that Elizabeth has not carried her burden of proving the payments were not made with community property. Therefore, Elizabeth owes reimbursement to Barry for one-half the amount of community funds spent to pay for her separate properties, in accordance with LSA-C.C. art. 2366. This amount, as testified to by Elizabeth, is one-half of $1792.56 on the Harper Valley property and one-half of $2149.25 on the High Country property. The total amount of reimbursement owed by Elizabeth to Barry is $1970.90.

Allocation Of Community Movables
Barry contends the trial court erred in awarding him a money judgment of $17,323.82 against Elizabeth instead of awarding him the movable assets in Elizabeth's possession. In allocating the movables, the trial court merely awarded to each party whatever was already in their possession and then gave Barry an equalizing sum of money (since Elizabeth had far more of the movables than Barry). Since we have changed the characterizations of some property, reassessed some valuations and changed the liabilities of the parties, we must vacate the award of money to Barry. The case is remanded to the trial court for repartitioning, with instructions to follow the dictates of LSA-R.S. 9:2801(4)(c) in allocating assets and liabilities. An equalizing payment should be awarded only in the event the division of assets and liabilities does not result in an equal net distribution. See Spaht, "Matrimonial Regimes," 43 La. L.Rev. 513 (1982).

*1008 Decree
For the reasons given above, the judgment of the trial court is reversed in part and affirmed in part. The case is remanded to the trial court for further proceedings in accordance with the law and the opinions expressed herein. Costs of this appeal are assessed one-half to Barry Breaux and one-half to Elizabeth Breaux.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[*] Retired Judge Charles Wm. Roberts sitting Pro Tempore pursuant to order of the Louisiana Supreme Court dated November 3, 1989.
[1] We note that the trial court erroneusly analogized the case before us to cases in which one spouse's separate property was mortgaged prior to the existence of the community. See Cook v. Cook, 457 So.2d 235 (La.App. 3d Cir.1984); Willis v. Willis, 454 So.2d 429 (La.App. 3d Cir.1984). In these cases the obligation was clearly the separate obligation of the spouse who incurred it prior to the existence of the community. Compare Guillory v. Desormeaux, supra.