650 So.2d 436 (1995)
Everett John HEBERT, Plaintiff-Appellant,
v.
Mary Adelle Vidrine HEBERT, Defendant-Appellee.
No. 94-864.
Court of Appeal of Louisiana, Third Circuit.
February 15, 1995.
*437 James Nathan Prather Jr., Lafayette, for Everett John Hebert.
Vincent Joseph Saitta, James Kirk Piccione, Lafayette, for Mary Adelle Vidrine Hebert.
Before KNOLL, SAUNDERS and AMY, JJ.
KNOLL, Judge.
This case involves the partitioning of community property. The trial court determined that community funds were used to improve the separate immovable property of Everett John Hebert (Everett) and that his wife, Mary Adelle Vidrine Hebert (Mary), was entitled to reimbursement for one-half the value of improvements made to that separate property. The trial court further ruled that a whole life insurance policy owned by Everett on the life of his mother was a community asset and that Mary was entitled to reimbursement equivalent to one-half the cash surrender value of the policy.
Everett appeals, contending that the trial court erred in finding that: (1) community funds were used to construct the community home on his separate immovable property; and (2) the whole life insurance policy which insured his mother was a community asset. We affirm, finding no manifest error in the trial court's judgment.

FACTS
Mary and Everett were married on October 7, 1982. On August 31, 1990, a judgment of separation was rendered, retroactively terminating the community as of April 27, 1990. It is undisputed that Everett owned a residential lot at 105 Quail Circle in St. Landry Parish before his marriage to Mary and that this lot was clearly his separate property. The parties began constructing a home on the Quail Street lot in December 1984. Construction continued at least until 1987. Trial testimony showed that the home was not yet completed when the parties separated in 1990. The facts about the origin of the funds used to construct the house are in dispute and will be detailed later in the body of the opinion.
The whole life insurance policy on Everett's mother was issued by Northwestern Mutual Life before Everett and Mary separated. Everett is listed as the owner and beneficiary of the policy and payments were made monthly. At the time of the termination *438 of the community, the life insurance policy had a cash surrender value of $24,667.68. As was the case with the funds for the house construction, there is a dispute about whether the funds used to pay for the insurance policy were separate or community. Accordingly, discussion of the facts about the payment on the life insurance will be discussed in the body of this opinion.

COMMUNITY REIMBURSEMENT: HOUSE CONSTRUCTION
Everett contends that the trial court erred in its determination that he owed reimbursement to Mary for the construction of the home on his separate property. He contends that Mary is not due reimbursement because only his separate funds were used to pay for the home construction.
Improvements placed on the separate property of one spouse during a marriage are presumed to be paid for with community funds and the burden of proving that community funds were not used is on the spouse who owns the separate property. LSA-C.C. Art. 2340; Breaux v. Breaux, 555 So.2d 1001 (La.App. 3rd Cir.1990). Everett may rebut the presumption by proving that he acquired the property with separate funds or with a mixture of funds where the community's contribution is inconsequential compared to the amount of separate funds used. LSA-C.C. Art. 2341; Breaux, supra. Where separate and community funds are commingled indiscriminately so that separate funds cannot be identified or differentiated from the community funds, all the funds are characterized as community funds. Curtis v. Curtis, 403 So.2d 56 (La.1981). To overcome the presumption of community, Everett must present clear and convincing evidence. Salley v. Salley, No. 94-418 (La.App. 3rd Cir. 11/23/94), 647 So.2d 1164.
Everett argues that the money used in the construction of the home on his separate property was derived from three sources, all of which were his separate property: (1) $32,281.99 profit from the sale of his home which he acquired prior to his marriage to Mary; (2) approximately $50,400 acquired from his grandmother's donation of stock certificates to him; and (3) $10,000 borrowed from his mother.
The trial court stated:
Everett claimed he deposited the three (3) aforementioned separate assets into a separate checking account from which he paid all of the building expenses for the Quail Circle house. However, he presented no documentary evidence of his alleged separate checking account, nor did he present any bank statements, deposit slips or canceled checks that would have evidenced deposit of these separate assets or of payment of the Quail Circle building expenses. When cross-examined, Everett admitted that he did pay some home building expenses from the joint checking account. In contrast, Mary stated that there was only one checking account and one savings account, both of which were joint, and she knew nothing of a separate checking account for Everett.
* * * * * *
The Court finds that Everett did not prove by a preponderance of the evidence that the three (3) stated separate funds were not co-mingled with joint funds ... While the Court is aware that commingling of a minor amount of community funds with separate property in a bank account will not transform the funds therein into a community fund, the Court finds there was insufficient proof presented by Everett that his funds were co-mingled with a "minor" amount of community funds. The Court finds that any separate funds of Everett's were comingled with the community funds to such an extent that they lost their separate character.
Even assuming that the disputed funds were initially Everett's separate funds, there is nothing in the record which establishes that the trial court's ruling is manifestly erroneous. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). The record shows that it took at least seven years to construct the home. During that time both spouses generated community funds from their employment outside the home. Mary earned approximately $12,000 in 1983, the only year she was employed until she returned to work *439 in 1988. The record further shows that Mary also deposited $10,000 of her separate money into a community bank account at the time of their marriage for the use of the community. Everett earned approximately $30,000 in 1983 and $32,000 in 1984; he was unemployed from 1985 to 1988. It was uncontradicted that the funds earned by the spouses were placed into a community checking account. Based on the failure of Everett to substantiate his claim that he segregated his separate funds, it is clear that the trial court properly concluded that these separate funds were commingled with significant amounts of community money to the extent that they lost their separate character. Accordingly, we find no merit to Everett's claim for reimbursement for construction of the community home. Everett simply failed to prove this claim by clear and convincing evidence.

LIFE INSURANCE POLICY ON EVERETT'S MOTHER
Everett next contends that the trial court erred in classifying the whole life insurance policy on his mother as a community asset. He argues that his mother was using this policy as an estate planning device and that she gave him money monthly to pay for the insurance premium. Everett further argues that the monthly check issued by his mother was a gift to him.
Louisiana jurisprudence has firmly established that the only issue with respect to gifts of this nature is whether the donor intended her donation as a gift to the individual or to the community. In answering that question, the intention of the donor controls the identity of the donee or donees. Allbritton v. Allbritton, 561 So.2d 125 (La.App. 3rd Cir.), writs denied, 565 So.2d 445, 454 (La.1990). As stated earlier, the burden of overcoming the presumption of community property set out in LSA-C.C. Art. 2340 rests upon the party who asserts that the property is separate. Id.
It is undisputed that Everett is the owner of the insurance policy on his mother's life, and that at any time he could withdraw the cash value of the policy. Everett's mother did not testify, thus we have no testimony from the donor to establish her intent and must rely upon Everett's testimony. Everett testified that his mother wrote him a check every month for the insurance premium. He stated that he deposited his mother's monthly check into the bank and then issued a check to the insurance agent for the policy premium on his mother's life. Everett specifically said, "To my knowledge it [the insurance policy on his mother] was not set up as a gift to me." Instead, Everett stated that the insurance policy was designed to assist his mother's estate planning by minimizing her estate taxes.
Based upon this evidence, we find, as did the trial court, that Everett failed to prove that the life insurance policy on his mother's life was his separate property. The funds donated monthly to pay the premium were received during the existence of the community and it is clear that the ownership of this life insurance policy definitely benefitted the community. Therefore, we do not find manifest error in the trial court's determination that Mary was entitled to one-half the cash surrender value of the life insurance policy at the time the community terminated.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Everett Hebert.
AFFIRMED.
SAUNDERS, J., concurs in part and dissents in part with reasons.
SAUNDERS, Judge, dissenting in part.
The questions before the court are (1) whether community funds were used to improve the separate immovable property of Everett John Hebert, entitling Mary Hebert to reimbursement for one-half of the value of the improvements, and (2) whether a whole life insurance policy owned by Everett on the life of his mother was a community asset entitling Mary to one-half the cash surrender value at the time the community was terminated.
The majority proposes affirming the trial court's judgment in favor of defendant on both issues. As to the second issue, the life *440 insurance policy, I cannot agree with the majority. Accordingly, I dissent in part.
Ordinarily, life insurance policies are classified as of the time the policy contract becomes effective. T.L. James and Co. v. Montgomery, 332 So.2d 834 (La.1975). If the policy is acquired before the marriage, the policy is separate property; if acquired during the existence of the community, it is community. See generally, Spaht and Hargrave, Matrimonial Regimes, 16 Louisiana Civil Law Treatise (1989), § 3.26 at 85. However, these rules do not govern life insurance policies that are funded by revenues not belonging to the community, see Roberts v. Roberts, 304 So.2d 839 (La.App. 2d Cir. 1974). In such instances, even where a spouse is listed as a beneficiary, such property does not form part of the community. Spaht and Hargrave, § 3.14 at 61-62.

I.
In my view, the funds used to purchase the policy belonged to Everett's mother, did not form part of Everett's patrimony, and therefore cannot possibly be part of the community. LSA-C.C. art. 2334 states as follows:
The legal regime of community of acquets and gains applies to spouses domiciled in this state, regardless of their domicile at the time of marriage or the place of celebration of the marriage.
(Emphasis added.)
Everett's mother clearly is not part of the community. Thus, if the funds used to pay the policy belonged to her, the majority erred in misappropriating them to defendant. Ignoring the plaintiff's mother's clear intent, the majority concludes otherwise.

II.
Moreover, even if the funds used to purchase the policy belonged to Everett and not his mother, as the majority states, the majority errs in requiring corroborative evidence from him to show its separate nature, for defendant produced no evidence to counter Everett's testimony on the subject (and she too could have subpoenaed Everett's mother).
LSA-C.C. art. 2340 provides as follows:
Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property.
Nowhere does this or any other provision mention the need for corroborative evidencelet alone corroborative evidence specifically from the testatoras required by this majority. Compare LSA-C.C. art. 187:
The husband can disavow paternity of a child if he proves by a preponderance of the evidence, facts which reasonably indicate that he is not the father. However, these facts must be susceptible of independent verification or of corroboration by physical data or evidence, such as scientific tests and verifiable physical circumstance of remoteness, including but not limited to....
[Emphasis added.]
Compare LSA-C.C. art. 1846:
When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.

[Emphasis added.]

III.
Moreover, the majority errs even if corroboration is required.
As Mary admits in brief, at trial she acknowledged that the money used to pay for the insurance policy was received from Everett's mother.
Additionally, the checks given to Everett to pay the premiums invariably were in the precise amounts required to pay for the premiums then due and listed, in the "memo" section of each check, the identical policy number. These items corroborate Everett's account. Thus, even assuming that funds temporarily entrusted to Everett could be considered his (which I do not believe), aided by corroborative evidence, he successfully rebutted the presumption of community set forth in LSA-C.C. art. 2340, supra.

*441 CONCLUSION

In the end, the majority concludes that Everett's testimony is not to be believed solely because it is not corroborated by his mother. I do not believe that the positive testimony of the donor is critical when the circumstances lead to the inescapable inference that the donation was not intended to benefit the community. See, e.g., Campo v. Campo, 376 So.2d 519, 521 n. 1 (La.App. 4th Cir.1979), writ denied, 378 So.2d 1390 (La. 1980) (per then-Judge Lemmon).
Everett only had to prove his mother's intent by a preponderance and, of course, proof by direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole, such proof shows that the fact sought to be proved is more probable than not. The majority errs in concluding otherwise. See Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993), citing Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151, 155 (1971) and other authority.
Applying the appropriate standard of review, the insurance policy in this case was either funded by revenues not belonging to the community, see Roberts, supra, and Spaht and Hargrave, supra, or donated to Everett alone by his mother. Accordingly, I respectfully dissent.