671 So.2d 571 (1996)
Carol Ann Joseph, Wife of Robert Louis MAJOR
v.
Robert Louis MAJOR.
Nos. 94-CA-1885, 94-CA-1886.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1996.
Rehearing Denied April 24, 1996.
*574 William F. Wessel, Wessel and Associates, New Orleans, for appellant, Carol Ann Joseph Major.
Steven K. Faulkner, Jr., Metairie, for appellee, Robert Louis Major.
Before ARMSTRONG, LANDRIEU and MURRAY, JJ.
MURRAY, Judge.
Carol Ann Major appeals a judgment partitioning community property of her marriage to Robert Major. Robert Major has answered the appeal. We affirm.

FACTS:
Carol Ann Major and Robert Major were married on January 30, 1960. On August 26, 1987, Mrs. Major recorded a Declaration of Separateness of Property, declaring that the fruits of separate property which she had inherited during the existence of the community, were to henceforth be her separate property. On September 20, 1989, Mrs. Major filed a Petition for Separation, which was granted the following day. Thus, the community that had existed between the parties ended on September 20, 1989.
On May 30, 1991, Mr. Major filed a Petition for Judicial Partition of Community Property, which was consolidated with the record on the separation proceedings. A trial was held on January 13 and 14, 1994, and judgment entered on April 7, 1994. This appeal arises from the judgment on the partition of the community property.

ISSUES:
Mrs. Major raises six issues in her appeal, one of which is now moot and will not be discussed. She first claims that it was error for the trial judge to award an amount for the uncompensated labor of the community without determining the value of the separate property at the time she filed her Declaration of Separateness, and without determining the value as of the date of the termination of the community. Further, she argues that the trial court had no basis to find an enhanced value of the separate property.
Second, Mrs. Major claims that the trial court erred in deciding Mrs. Major owed the community reimbursement of $24,000 for principal reduction of the mortgages on her separate property.
She also claims that it was error for the court to consider as part of the community assets cash that the parties had divided between them prior to the dissolution of the community.
Mrs. Major also contends that the court erred when it determined that she owed the community reimbursement of $4,000 for furs and jewelry because these were gifts to her from Mr. Major, and their value was not proven.
Last, Mrs. Major claims that the court erred when it determined that Mr. Major did not owe reimbursement to the community for insurance proceeds he received from claims on community property, and when it allowed him reimbursement of a deductible he paid on an insurance claim on community property that he later received in a partial voluntary partition.
In his answer to the appeal, Mr. Major claims that the trial court erred in not awarding him the full amount of expenses he advanced on behalf of the community corporation; erred in awarding Mrs. Major reimbursement for automobile insurance expenses without proof of expenditure; erred in failing to award the community fair compensation for services rendered to Mrs. Major's separate property between the date of filing of the Declaration of Separateness and the date the community terminated; and erred in failing to award him rental payments on a lease of Mrs. Major's separate property of which he was a co-lessor.

*575 DISCUSSION:
In her first assignment of error Mrs. Major claims that the trial court erred in its determination that the community had not been compensated for its labor in improving her separate property. Because of this uncompensated labor, the court determined that the community was entitled to reimbursement for the enhanced value, which it further determined to be $30,000.
Mrs. Major inherited six pieces of rental property in 1980. One of these pieces of property, located on Alabama Street, is at issue. This property was converted into a single residence in 1986 at a cost of $4,372. Mrs. Major claims that the work was done through the community-owned corporation. Mr. Major disagrees, claiming that he personally did the work. Mrs. Major also claims the community was compensated because the cost of the conversion was paid out of the rents, which at the time of the work, were community property. Mr. Major counters that the community was never compensated, and should recover the amount of the enhanced value.
The trial court found that the value of the property as of the date of inheritance was $50,000, and that the enhanced value was $80,000. The court awarded Mr. Major's separate estate $15,000, or half of the enhanced value.
At trial each party had an expert testify as to the appraised value of the property. Peter Cannizaro, who testified on behalf of Mr. Major, was accepted by the court as an expert in residential appraisal. He testified that he performed a limited appraisal using certain factors supplied by Mr. Major. He considered that the property collected $1,500 per month rental income. He understood that this income had been generated since 1986 and assumed that it would continue.
Mr. Cannizaro estimated the value of the property at $90,000, using both an income and a market value approach. Using a pure income approach, he valued the property at $110,625. To do this, he determined what several other income-producing properties in the area were receiving in rent, what the sale price was on those properties, and established a gross rent multiplier. He then multiplied the monthly income on the subject property to arrive at this figure. Using a pure market value approach, he valued the property at between $50,000 and $55,000. Upon questioning by the court, Mr. Cannizaro stated that he did not use any exact formula to arrive at the $90,000 figure, but instead used a conglomeration of the two approaches. On cross-examination, Mr. Cannizaro admitted that he had not viewed the inside of the property, nor did he know the square footage of the property or any of the other properties he used in his appraisal. In his calculation, he considered the fact that the lease was a year-to-year lease, but had the impression that the lease would likely continue long-term. He admitted that if he had known that there was no written lease on the property, so that the lessee could vacate at any time, he would not have given as much weight to the income value, because, based on his experience appraising property for financial institutions, no credence would be given to the income value without the existence of a long-term lease.
Ken Bickford testified on behalf of Mrs. Major. He also was accepted as an expert appraiser. Mr. Bickford prepared a report on his findings which was entered into evidence. In arriving at an appraised value, Mr. Bickford also used both the market value approach and the income value approach. He, however, gave greater weight to the market value. Using market value, he valued the property at $50,000. Using the income value method, he appraised the property at $59,823. When asked by the court why his value differed so greatly from Mr. Cannizaro's income value figure, he explained that he used $900 a month as the rental amount because that was a comparable amount of rent on similar properties in the area. Mr. Bickford claimed to have particular knowledge of rental property in eastern New Orleans, and stated that the $1500 rent was an anomaly. He testified that the highest and best income producing use for the property was a double. He did admit that using his gross rent multiplier figure and the $1500 per month rent, the value of the property would be $99,000.
*576 Louisiana Civil Code art. 2368 states:
If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor.
Mrs. Major's claim that the community was compensated for the amount spent to convert the property through the community rents collected is without merit based on the clear language of article 2368, which provides that the community is to be reimbursed one-half of the increased value, not the cost of the work performed. Once the claimant has established that the increase in value of the separate property of the other spouse is due to the uncompensated labor of the other spouse, the claimant is entitled to one-half of the enhanced value of the separate property. Even if that value exceeds the value of the uncompensated labor, the claimant is nevertheless entitled to recover the greater amount. Krielow v. Krielow, 93-2539 (La. 4/11/94), pp. 8-9, 635 So.2d 180, 185; also see, Deliberto v. Deliberto, 400 So.2d 1096, 1103 (La.App. 1st Cir.1981). The trial court made a factual finding that the labor of the community was uncompensated; we will not disturb that finding absent manifest error.
Mrs. Major also argues that the court used inappropriate dates to determine the enhanced value of the property. The parties agreed that the value on the date of inheritance was $50,000. Mrs. Major's expert valued the property as of April 1993. Mr. Major's expert valued the property as of the date of trial in January of 1994.
Louisiana Revised Statute 9:2801(4)(a) provides that "[t]he court shall value the assets as of the time of trial on the merits ..." However, a trial judge is given broad discretion in adjudicating the community regime. Razzaghe-Ashrafi v. Razzaghe-Ashrafi, 558 So.2d 1368, 1371 (La.App. 3d Cir.1990), citing Queenan v. Queenan, 492 So.2d 902 (La.App. 3d Cir.), writ denied, 496 So.2d 1045 (La.1986). Further, the Third Circuit reiterated its previous holding regarding the time of valuation:
The purpose of all this [9:2801(4)(a)] is to provide an occasion for the court to get a handle on the situation. It does not mean that the court is frozen by any statutory time level or particular valuation at any particular time or for any particular purpose, but simply to place values on the assets for the purpose of accounting, allocation, and adjudication in accordance with the further provisions of R.S. 9:2801(4)(b, c, d and e).
Accordingly, we cannot say that it was clearly wrong for the trial judge to value the property based on the dates used by the two expert appraisers.
Mrs. Major also claims that it was error for the trial court to rely on Mr. Cannizaro's testimony because he used an income value approach and only performed a "limited" appraisal. Mr. Cannizaro testified that he used both income value and market value to render his appraisal. Furthermore, the evidence of an expert witness is to be weighed by the trial court in the same manner as any other evidence. The court is not bound by the testimony of one expert or the other, and may accept or reject the expert testimony altogether. Madere v. Madere, 93-610 (La.App. 5th Cir. 2/9/94) p. 3, 632 So.2d 1180, 1182. In its reasons for judgment the trial court stated that it had considered the testimony of both experts regarding the market value and income value approaches, and determined the value of the Alabama Street property to be $80,000. This compromise figure is not so out of line with the appraisals as to constitute manifest error. Ramstack v. Krieger, 470 So.2d 162, 164 (La.App. 4th Cir.), writ denied, 474 So.2d 1310 (La.1985). We affirm this portion of the judgment.
In her next assignment of error Mrs. Major claims that the court erred when it found that she owed the community reimbursement of $24,000 for the principal reduction of the mortgage on her separate property. She argues that she should not owe reimbursement to the community because the cash flow generated by the separate property was sufficient to carry the burden of the taxes, insurance and mortgage payments. *577 In support of this argument she cites several cases that we find inapposite. In Succession of Brunies, 209 La. 629, 25 So.2d 287, 290 (1946), it was established that the husband, who owned the separate property, was ill and could not work. Further, the wife did not have sufficient income to pay the mortgage and other expenses on the separate property, and in fact, the main source of community income was the rent from the separate property. Occasionally, the couple had to borrow money for living expenses and used the husband's separate property as security on the loans. The court did not credit the community with any of the community funds (rents) used to pay off the loans, including the principal. The court reasoned that the rents were not used to benefit the husband's separate property, but rather to benefit the community. Accordingly, no reimbursement was due to the community.
In Chrisentery v. Chrisentery, 124 So.2d 426, 431 (La.App. 1st Cir.1960), another case cited by Mrs. Major, the court explains very clearly:
... that if the community expenditures do nothing more than to preserve the separate property and maintain it in its normal condition, such expenditures are chargeable to the community and the separate estate is entitled to a credit for said amount but if the expenditures are for substantial improvements which appreciably enhance the value of the separate property, then the owner of the separate property is not entitled to a credit for the value of said improvements.
Factually, this case is not on point because the wife was seeking to have her separate estate credited for mortgage payments made out of the community property rents. However, the court found that the mortgage was on a community-owned building which had substantially enhanced the value of her separate property, and the court found no reimbursement was due.
Louisiana Civil Code art. 2366 provides in pertinent part:
If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used. (emphasis added)
Simply put, Mrs. Major's separate property benefited by the reduction in the principal balances on the mortgages. The reimbursement owed to the community is the equivalent of the principal reduction of the mortgages made with community funds. See, Longo v. Longo, 474 So.2d 500, 503 (La.App. 4th Cir.), writ denied, 477 So.2d 711 (La. 1985). As stated above, the Majors did not depend, as did the Brunies, on the rents from these properties as their main source of income, nor did Mrs. Major mortgage her separate property because she needed money for living expenses. Therefore, we do not believe the holding in the Brunies case is applicable. The parties stipulated that the principal on the mortgages was reduced by $24,000. Accordingly, we find no error in the trial court's determination that Mrs. Major owed reimbursement to the community for this amount.
In her third assignment of error, Mrs. Major argues that the trial court erred when it charged her to account for $82,000 and Mr. Major for $28,592 in cash that each had withdrawn from community accounts prior to dissolution of the community. Mrs. Major contends that neither party should have to account for these funds because, pursuant to an agreement between the parties, these sums were disposed of before the community terminated. Mr. Major denied the existence of such an agreement.
To support her position Mrs. Major cites Roberts v. Roberts, 542 So.2d 517, 519 (La. App. 5th Cir.), writ denied, 547 So.2d 1317 (La.1989). In that case the wife claimed the husband had funds in certain accounts for which he had not accounted. The husband admitted that he had approximately $42,000 in one account as of one month prior to the termination of the community, however he could not state with certainty what happened to the money. The court found that because the funds apparently disappeared during the existence of the community, no accounting was due absent evidence of fraud or bad faith (citing La.Civ.Code arts. 2354 and 2369).
*578 The wife in Roberts was originally held accountable by the trial court for $56,000 she claimed was withdrawn from a community account prior to filing suit, which she alleged she needed "to live on." The trial court held that in the absence of a court-ordered judgment of support, she could not use the funds for living expenses and must account for them. The Fifth Circuit reversed stating that La.Civ.Code art. 2369, which provides for an accounting between spouses for community assets under a spouse's control at the termination of the community, was not applicable because the wife had used the assets during the existence of the community, just as the husband had. Again, absent allegations of bad faith or fraud in the management of the community assets, no accounting was due. Id. at 521.
The problem with application of Roberts to the instant case is that there is no evidence that either Mr. or Mrs. Major spent the money they withdrew before the community terminated. To the contrary, Mr. Major introduced into evidence a ledger sheet that Mrs. Major admitted she personally prepared. Mrs. Major testified that she and Mr. Major met with their personal attorney on the date the community terminated, and reviewed the ledger sheet. She admitted under cross-examination that the purpose of the document was to establish who had what money as of that date. The ledger indicated that Mrs. Major had withdrawn $50,000 on August 28, 1989, and another $30,000 on August 29, 1989. She also withdrew $2,000 from another account which she testified she "had on her" (on the date of the meeting with the attorney) for a proposed hunting trip. These withdrawals equal the $82,000 the court determined she owed to the community.[1] Contrary to Mrs. Major's assertion in her brief that the funds were "disposed of before the community terminated, the record supports the court's finding that these monies were still in the possession of the individual parties, and correctly held that reimbursement was due.
In her fourth assignment of error, Mrs. Major complains that the court erred when it found that she owed the community reimbursement of $4,000 in jewelry and furs that were gifts to her from Mr. Major, the value of which was not proven.
Property acquired by a spouse by donation to her individually is her separate property. La.Civ.Code art. 2341; Tullier v. Tullier, 464 So.2d 278 (La.1985). However, a party asserting the separate nature of property acquired during marriage has the burden of overcoming a strong presumption in favor of the community. See, La.Civ.Code art. 2340; Curtis v. Curtis, 403 So.2d 56 (La.1981). The burden of proof required to overcome the presumption is clear and convincing evidence. Hebert v. Hebert, 94-864 (La.App. 3d Cir. 2/15/95), 650 So.2d 436.
The record before us does not indicate that Mrs. Major sufficiently rebutted the presumption that the jewelry and furs were community property. The testimony given by Mrs. Major at trial concerned only the value of the items in question. There is no evidence in the record to support the claim made by Mrs. Major in her brief that these items were gifts. We, therefore, cannot say that the trial judge was clearly wrong in finding that the items were community property.
As to the value of the property, we disagree with Mrs. Major's claim that the trial court "pulled the figure of $4,000 out of thin air." The court pointed out during trial that Mrs. Major, in her deposition, valued a diamond ring at $2,000 to $3,000 and the furs at $2,000. In the Joint Stipulation as to Contested Issues, she valued the jewelry and furs collectively at $2,000. At trial she claimed she had no idea of the value of any of the items. On the other hand, Mr. Major claimed in his sworn descriptive list that the property was worth $20,000, and in the Joint Stipulation as to Contested Issues that they were worth $9,500. The trial court obviously gave more weight to Mrs. Major's valuations and determined that the value was $4,000.
*579 This determination is not clearly wrong based on the record before us, and we will thus not upset this factual finding on appeal.
In her final assignment of error Mrs. Major contends that the trial court erred when it failed to find that Mr. Major owed reimbursement to the community for insurance proceeds he received for claims on community property, and when it allowed Mr. Major a deductible he paid on an insurance claim on community property he eventually received in a voluntary partial partition.
Three separate claims for damages were made pursuant to liability policies covering three separate pieces of community property. The claims were made prior to the termination of the community, but the insurance proceeds were received by Mr. Major after the termination of the community. Mr. Major later received these same pieces of property in a partial partition. Mrs. Major claims that he should have to reimburse the community for these amounts totalling $7,300 because he never proved he used the funds to repair the properties.
No testimony was taken on this issue; rather, the attorneys stipulated as to what their respective clients would say. It was stipulated that Mr. Major would testify that he did make repairs to the properties with the insurance proceeds, and Mrs. Major would say that he produced no bills to prove it.
The insurance proceeds were for claims made to community property. Since Mr. Major later accepted the property in the voluntary partial petition, he, not the community, suffered if he had failed to make the repairs. It, therefore, was not clearly wrong for the trial court to rule as it did.
Nor do we find merit in Mrs. Major's claim that the court erred in allowing Mr. Major a reimbursement for an insurance deductible he paid. Mr. Major paid the deductible on March 3, 1993. Although the community had terminated as of that date, the community property had not been divided. Therefore, Mr. Major paid the deductible out of his separate funds, and he was entitled to reimbursement from the community.
Now we turn to Mr. Major's answer to appeal and the four assignments of error raised therein. His first claim alleges the trial court erred in not awarding him the full amount of expenses he advanced on behalf of the community corporation. The court allowed Mr. Major credit for corporate expenses he paid with separate funds, but debited him for half of the profits he collected from the corporation. Despite Mr. Major's claims that the corporation never remodeled houses, and had not built houses for some five to fifteen years prior to the termination of the community, it is obvious to this court that the corporation remained in existence, and that Mr. Major continued to use it for various tax advantages, i.e., vehicles, gasoline, limited personal liability. He also continued to enjoy the good will of the corporation. For this reason, the trial court did not err when it required Mr. Major to account for half the profits.
Mr. Major's second assignment of error is that the trial court erred in allowing Mrs. Major reimbursement for automobile insurance on a community-owned vehicle without proof of expenditures. First, he contends that the evidence is insufficient to support the award since the only evidence in support of this claim was a ledger sheet she prepared and copies of cancelled checks; no corroborating invoices were introduced. Second, he argues that the jurisprudence disallows reimbursement from the community for expenses of a vehicle of which a spouse has exclusive use.
The tenor of La.Rev.Stat. 9:2801 is to effect an equitable distribution of community assets and liabilities. The trial judge has vast discretion in carrying out this duty. Based on the evidence before us, we do not find it unreasonable for the court to allow Mrs. Major this entire expense, especially when considering that: the vehicle was a community asset; Mrs. Major used her separate funds to pay the premium; and, Mr. Major had exclusive use of a corporate-owned vehicle for which he was given credit for expenses paid from his separate funds.
The third assignment of error raised by Mr. Major is the trial court's failure to *580 award the community fair compensation for services rendered to Mrs. Major's separate property between the filing of her Declaration of Separateness and the date the community terminated. Mr. Major claims the community labored to produce the $30,923 in rents collected on Mrs. Major's separate property during this time period, and should be reimbursed for its uncompensated labor in producing these separate funds.
Louisiana Civil Code art. 9 provides that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." Louisiana Civil Code art. 2339 states that civil fruits (rents) of the separate property of a spouse are community property. However, the article further provides that the spouse may reserve these civil fruits as his separate property executing a declaration to that effect. We do not find this article to be ambiguous in any way. Mrs. Major executed a declaration and properly recorded it in August of 1987. Therefore, the rents from her separate property from August of 1987 forward were her separate property.
We do not find that the case cited by Mr. Major, Kyson v. Kyson, 596 So.2d 1308 (La. App. 2d Cir.1991), writ denied, 599 So.2d 314 (La.1992), supports his position on this claim. In that case, Mr. Kyson owned separate property, and had filed a declaration of separateness. He argued that the rents collected were, therefore, his separate property. Mrs. Kyson, however, argued that the rents were produced primarily as a result of the labors of her husband, and thus the rents should be classified as community property under La.Civ.Code art. 2338. The court originally found that although the passive rental income was Mr. Kyson's separate property, the value of his labor invested in producing the passive rentals was community property. Mr. Major relies on the opinion on the original hearing on the matter. However, the court reversed itself as to that issue on rehearing, and clearly held that the rent collected from Mr. Kyson's separate property became his separate property after he filed a declaration to that effect. Even considering the original opinion, Mr. Major's labors did not rise to the level of work performed by Mr. Kyson. Testimony established that Mr. Major made necessary physical repairs to the property and Mrs. Major maintained the books. There was no other evidence that Mr. Major performed "substantial services" in the care and management of those properties. We find no error in the ruling of the trial court on this issue.
Mr. Major's last assignment of error is that the trial court erred in not awarding him income from the Alabama Street property because he was a co-lessor. The original lease on this property was executed August 4, 1986, listing both Mr. and Mrs. Major as co-lessors. The lease was automatically renewable every two years for an additional two year period. Mrs. Major entered into a new lease on October 1, 1991. Mr. Major claims he is due half of the rents collected from the date the community terminated until the execution of the new lease by virtue of his co-lessor status. He argues that his contractual position was not negated by Mrs. Major filing a Declaration of Separateness.
First, we must point out that Mr. Major did not own the property in question; it was Mrs. Major's separate property. Thus he could not be a lessor because he could not encumber property he did not own. Second, if Mr. Major is implying that by his signing the lease as a co-lessor, an interest in the property was somehow transferred to him, his claim is without merit. To transfer separate property into the community, either movable or immovable, a transfer by onerous title must be in writing and a transfer by gratuitous title must be made by authentic act. La.Civ.Code art. 2343.1. The mere signing of a lease as co-lessor is not sufficient.
Accordingly, for the reasons assigned above, the judgment of the trial court is affirmed, with each party to bear their own appeal costs.
AFFIRMED.
NOTES
[1] The court did not include $10,000 which Mrs. Major testified was deposited into a house account for payment of community debts.